## State v. Jones
### [Cite as 8 AOA 48]

*Case No. 12037*
*Montgomery County, (2nd)*
*Decided December 6, 1990*

*Lee C. Falke, Prosecuting Attorney, By Steven L. Wagenfeld, Assistant Prosecuting Attorney, Appellate Division, Suite 315, 41 N. Perry Street, Dayton, Ohio 45402, Attorney for Plaintiff-Appellee.*

*Thomas L. Whiteside, Suite 236, 333 West First Street, Dayton, Ohio 45402, Attorney for Defendant-Appellant.*

BROGAN, J.

Appellant, Kimberly D. Jones entered pleas of no contest to the offenses of Drug Abuse and Carrying a Concealed Weapon after the trial court overruled her pretrial motion to suppress evidence of these offenses.

In her sole assignment of error, appellant contends the trial court erred as a matter in overruling her motion in that the State failed to show or prove an articulable suspicion warranting either the initial stop and detention or the reasonableness of the subsequent search and seizure of her purse.

Michael Sipes testified he had eleven years experience as a Dayton police officer and had been working for the Neighborhood Security Unit, a drug enforcement team, for the year and a half prior to arresting the appellant.

Sipes stated he and three other Dayton Police officers were patrolling the area of West Fourth and Williams Streets in an unmarked van on August 8, 1989 when he observed the appellant sitting in the driver's seat of a parked car with Sherry Glanton a person he had arrested and convicted for drug abuse about a year earlier. Sipes stated he observed three or four persons standing around the vehicle and there was one person on the passenger side leaning into the car. Sipes said as Sergeant Robert Reese pulled the unmarked van around the corner, these people saw them and the person leaning in the car stood up and all the people outside the car began to walk away in different directions.

Sipes stated he and the other officers were dressed in civilian clothes with blue windbreakers and "Dayton Police" stenciled on their jackets and police badges. Sipes stated that the area was a high drug area and that based on his experience he concluded the activities he had observed were consistent with drug dealing. (Tr. 7). Sipes said Reese thus pulled the police van over directly facing the front of the appellant's car, and they all except Reese exited the van. Sipes said Officers Goodwell and Armstrong went to stop the pedestrians while he walked up to the passenger side of appellant's car and asked Sherry Glanton to get outside. Sipes stated he and the other officers were all wearing gun belts with their weapons exposed.

Sipes stated he then looked into the parked car and asked the appellant if she had any identification intending to "at least complete a field interview card on both Ms. Glanton and the appellant." (Tr. 8). Sipes said the appellant reached into a purse which was lying on the front seat of the car and handed Sipes her identification. While she again reached into the purse, Sipes said he asked appellant to take her hand out of the purse and he asked her if he could check the purse for his safety and appellant responded in the affirmative.

Sipes stated as he lifted up the purse he could feel the handgun through the material and could feel the purse was heavier than a normal purse. He then opened the appellant's purse and recovered a loaded .22 caliber revolver. He then placed appellant under arrest for carrying a concealed weapon. At the police station, Sipes examined appellant's purse more thoroughly and recovered a white paper bundle containing heroin.

In *Terry v. Ohio* (1968), 392 U.S. 1, 30, the United States Supreme Court held that the police

can stop and briefly detain a person for investigative purposes if they have reasonable suspicion supported by articulable facts that criminal activity "may be afoot" even if they lack probable cause under the Fourth Amendment. Reasonable suspicion entails some minimal level of objective justification for making a stop -- that is, something more than an inchoate and unparticularized suspicion or "hunch", but less than the level of suspicion required for probable cause. *Id.* at 27.

Not all personal intercourse between policeman and citizens involves seizures of persons. Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of the citizen may we conclude that a "seizure" has occurred. *Terry v. Ohio, Id.* at 19, n. 16. The police can be said to have seized an individual "only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed he was not free to leave. *United States v. Mendenhall* (1980), 446 U.S. 544. The test is an objective one and is designed to assess the coercive effect of police conduct, taken as a whole, rather than focus on particular details of that conduct in isolation. *Michigan v. Chesternut* (1988), 486 U.S. 567.

Examples of circumstances that might indicate a seizure, even where the person did not attempt to leave, would be the threatening presence of several officers, the display of a weapon by an officer, or the use of language or a tone of voice indicating that the suspect was not free to leave the officer's presence.

A State may not make it a crime to refuse to provide identification on demand in the absence of reasonable suspicion. *Brown v. Texas*, 443 U.S. 47; 99 S. Ct. 2637.

In *Terry v. Ohio* (1968), 392 U.S. 1, the U.S. Supreme Court held that where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and the persons with whom he is dealing may be armed and presently dangerous, where in the course of investigating this behavior he identifies himself as a policeman and makes reasonable inquiries, and where nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or other's safety, he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him. The police officer must be able to point to specific and articulable facts, which taken together with their rational inferences reasonably warrant that intrusion.

A police officer may not rely on good faith and inarticulate hunches to meet the *Terry* standard of reasonable suspicion. *U.S. v. Porter* (8th Cir. 1987), 818 F. 2d 679, 683, cert. den. 484 U.S. 1006 (1988). Courts give considerable deference to the observations of a trained officer and the conclusions drawn from her experience and special knowledge. *U.S. v. Cortez* (1981), 449 U.S. 411, 418 and *U.S. v. Trullo,* 809 F. 2d 108, 111 (1st Cir.), cert. den. 482 U.S. 916 (1987).

In *Brown v. Texas* (1979), 443 U.S. 49, the United States Supreme Court held that the application of a Texas statute to detain appellant and require him to identify himself violated the Fourth Amendment because the officers lacked any reasonable suspicion to believe the appellant was engaged or had engaged in criminal conduct. The court further held that detaining appellant to require him to identify himself constituted a seizure of his person subject to the requirement of the Fourth Amendment that the seizure be "reasonable." Cf. *Terry v. Ohio*, 392 U.S. 1. The Fourth Amendment requires that such a seizure be based on specific, objective facts, indicating that society's legitimate interests require such action, or that the seizure be carried out pursuant to a plan embodying explicit, neutral limitations on the conduct of individual officers. Citing, *Delaware v. Prouse* , 440 U.S. 648.

The facts in *Brown* were the following:

Two police officers, while cruising near noon in a patrol car, observed appellant and another man walking away from one another in an alley in an area with a high incidence of drug traffic. they stopped and asked appellant to identify himself and explain what he was doing. One officer testified that he stopped appellant because the situation "looked suspicious and, we had never seen that subject in that area before." The officers did not claim to suspect appellant of any specific misconduct, nor did they have any reason to believe that he was armed. When appellant refused to identify himself, he was arrested for violation of a Texas statute which makes it a criminal act for a person to refuse to give his name and address to an officer "who had lawfully stopped him and requested the information." Appellant's motion to set aside an information charging him with violation of the statute on the ground that the statute violated the First, Fourth, Fifth, and Fourteenth Amendments was denied, and he was convicted and fined. The El

Paso County Court's rejection of his claim was affirmed by the highest State Court. On appeal to the United States Supreme Court, entered a reversal.

Chief Justice Burger delivered the opinion for an unanimous court and stated:

"The flaw in the State's case is that none of the circumstances preceding the officers' detention of appellant justified a reasonable, suspicion that he was involved in criminal conduct. Officer Venegas testified at appellant's trial that the situation in the alley 'looked suspicious,' but he was unable to point to any facts supporting that conclusion. There is no indication in the record that it was unusual for people to be in the alley. The fact that appellant was in a neighborhood frequented by drug users, standing alone, is not a basis for concluding that appellant himself was engaged in criminal conduct. In short, the appellant's activity was no different from the activity of other pedestrians in that neighborhood. When pressed, Officer Venegas acknowledged that the only reason he stopped appellant was to ascertain his identity. The record suggests an understandable desire to assert a police presence; however, that purpose does not negate Fourth Amendment guarantees.

"In the absence of any basis for suspecting appellant of misconduct, the balance between the public interest and appellant's right to personal security and privacy tilts in favor of freedom from police interference. The Texas statute under which appellant was stopped and required to identify himself is designed to advance a weighty social objective in large metropolitan centers: prevention of crime. *But even assuming that purpose is served to some degree by stopping and demanding identification from an individual without any specific basis for believing he is involved in criminal activity. the guarantees of the Fourth Amendment do not allow it.* When such a stop is not based on objective criteria, the risk of arbitrary and abusive police practices exceeds tolerable limits. See *Delaware v. Prouse, supra* at 661, 99 S.Ct., at 1400.

"The application of Tex. Penal Code Ann., Tit. 8, § 38.02 (1974), to detain appellant and require him to identify himself violated the Fourth Amendment because the officers lacked any reasonable suspicion to believe appellant was engaged or had engaged in criminal conduct. Accordingly, appellant may not be punished for refusing to identify himself, and the conviction is reversed." (Emphasis ours). 99 S.Ct. at 2641.

Under any objective view of the evidence, the conduct of the police officers resulted in a detention or seizure of the appellant prior to the search of her purse by Officer Sipes. Sipes viewed several individuals walk away from the appellant's legally parked car in a high crime area as the unmarked van approached. Sipes was unable to point to any "furtive" behavior on the part of the appellant or his passenger as found in *State v. Bobo* (1988), 37 Ohio St. 3d 177. Sipes belief that the appellant's "activities" were consistent with drug dealing was nothing more than an unarticulated hunch.

A person's mere presence in an area of high crime activity does not suspend the protections of the Fourth Amendment. *State v. Chandler* (1990), 54 Ohio App. 3d 92. Accordingly, we find that the detention of the appellant was unlawful and the fruits of that unlawful detention must be suppressed under the exclusionary rule. *Mapp v. Ohio* (1961), 367 U.S. 643. The assignment is well taken. The judgment of the trial court will be reversed and the appellant shall be ordered discharged from further custody and confinement.

WILSON, J., and FAIN, J., concur.