OPINION
{¶ 1} Defendant-appellant Steven R. Johnson appeals from his conviction and sentence for Possession of Cocaine, following a no-contest plea. Johnson contends that the trial court erred when it denied his motion to suppress evidence, upon the ground that the evidence was obtained as the result of an unlawful stop. We conclude that the evidence in the record supports the trial court's finding that the investigative stop was lawful. Accordingly, the judgment of the trial court is Affirmed.
 I {¶ 2} In its decision overruling Johnson's motion to suppress, the trial court made the following findings of fact:
 {¶ 3} "On August 16, 2001 at approximately 11:00 p.m., Dayton Police Officer Raymond Dine was patrolling the area of Staley Avenue and West Stewart Street. Office[r] Dine testified that he has been a member of the Dayton Police Department for two years, and that based upon his experience as a police officer working in the area that the neighborhood surrounding Staley Avenue and West Stewart Street is a low income, high drug and high crime area.
 {¶ 4} "Officer Dine testified that as he was driving east on West Stewart Street, approaching the intersection with Staley Avenue, he observed a vehicle on Staley Avenue that was parked facing south with the vehicle's engine running. Officer Dine further testified that he observed four or five African American males surrounding the vehicle. Officer Dine testified that he recognized one of the individuals as a McComb brother, with the McComb brothers being known by members of the Dayton Police Department as active in the drug trade. Officer Dine additionally testified that he saw Mr. McComb's arm reaching into the vehicle's rear passenger area. Officer Dine testified, based upon his observations and experience, that he suspected that a drug transaction was occurring.
 {¶ 5} "Officer Dine testified that in reaction to the suspected drug transaction that he decided to approach the stopped vehicle. Officer Dine testified that his cruiser must have been spotted because as he approached the vehicle the four to five individuals surrounding the car quickly dispersed, and the vehicle drove away. Officer Dine testified that he decided to stop the vehicle and that he accomplished the stop on West Stewart Street.
 {¶ 6} "Officer Dine testified that as he approached the stopped vehicle he decided to initially deal with the back seat passenger who was, in all probability, the individual who had contact with Mr. McComb. Officer Dine asked the back seat passenger, who turned out to be Mr. Johnson, for identification, which he was unable to supply. Officer Dine then ordered Mr. Johnson to exit the vehicle. Mr. Johnson did exit the vehicle, but when Officer Dine asked Mr. Johnson to walk to the cruiser, Mr. Johnson refused. Mr. Johnson, instead, squared his shoulders in seeming defiance of Officer Dine's request. Mr. Johnson also refused a second request from Officer Dine to walk to the cruiser. Officer Dine, further, testified that Mr. Johnson had his hands behind his back, would not show Officer Dine his hands, and it appeared that Mr. Johnson was manipulating something with his hands. Officer Dine, at this point, decided that he would perform a pat down search of Mr. Johnson's outer clothing. Officer Dine noted that Mr. Johnson was not, given the weather, wearing anything bulky. Officer Dine testified that as he was performing the pat down search that he felt what he immediately knew to be a crack pipe in the left front pocket of Mr. Johnson's pants. Officer Dine pulled the crack pipe from Mr. Johnson's pants, and arrested him for possession of crack cocaine."
 {¶ 7} We have reviewed the transcript of the suppression hearing, and we conclude that there is support in the record for the trial court's findings quoted above.
 {¶ 8} Johnson moved to suppress the evidence obtained as the result of the stop and pat-down. He contended that the stop was unlawful. At the hearing, he conceded that if the stop was lawful, then the pat-down was lawful, but contended that the seizure of the crack pipe from his pants pocket was, in any event, unlawful. The trial court denied his motion to suppress. Thereafter, Johnson pled no contest, was found guilty, and was sentenced accordingly. From his conviction and sentence, Johnson appeals.
 II {¶ 9} Johnson's sole assignment of error is as follows:
 {¶ 10} "THE TRIAL COURT ERRED BY DENYING APPELLANT'S MOTION TO SUPPRESS."
 {¶ 11} In support of his assignment of error, Johnson argues exclusively that police officer Dine's stop of the vehicle in which Johnson was a passenger was unlawful. In this appeal, he does not independently contest the propriety of the seizure of the crack pipe from his pocket.
 {¶ 12} Johnson argues that police officer Dine based his investigative stop solely upon two factors, and that these factors are not sufficient to justify an investigative stop. These factors are Dine's familiarity with the area in which the stop occurred as an "extremely high drug area," and his familiarity with the individual he knew only as McComb. Concerning McComb, Dine testified as follows:
 {¶ 13} "Q. And how do you know him?
 {¶ 14} "A. Uh. . . . he's — he's notorious to — to the area for — for selling drugs.
 {¶ 15} "Q. And how do you know that?
 {¶ 16} "A. He's been arrested for it in the past.
 {¶ 17} "Q. Okay.
 {¶ 18} "A. As far as I know. I've arrested his brother several times.
 {¶ 19} "Q"Q. Have you n — have you arrested individuals who bought drugs from Mr. McComb.
 {¶ 20} "A. I've had contact with individuals who say they have bought drugs from Mr. McComb."
 {¶ 21} Johnson relies upon State v. Alsup (January 31, 1997), Montgomery App. No. 15483, for the proposition that the mere character and reputation of an area, combined with an association with known drug users, is not an adequate basis for an investigative stop. The defendant in that case was stopped when he was seen emerging from a building known to be a location of prostitution activity. That circumstance, by itself, did not justify an investigative stop.
 {¶ 22} Johnson also relies upon State v. Jones (1990),70 Ohio App.3d 554 for the proposition:
 {¶ 23} ". . . that a detention is not based on reasonable suspicion where an officer observes a defendant sitting in a legally parked car with a known drug abuser, and where several people walk away from the car upon the approach of a police cruiser." In that case, no indicia of a drug transaction were observed; the police merely observed the defendant sitting in a parked car with a known drug abuser.
 {¶ 24} In the case before us, by contrast, police officer Dine observed activity that he suspected to be a drug transaction. Dine testified concerning the observations that led him to this conclusion, as follows:
 {¶ 25} "Q. And once you saw — or what did you observe these black males around the ve- — or where did you observe the black males around the vehicle?
 {¶ 26} "A. Uh . . . there was individual who was standing by the Defendant's window, which was the passenger side rear seat. Uh . . . he was leaning down into the vehicle. Uh . . . his arms were inside the car. As well as the two front passengers each had a male at their window and there was another gentleman standing at the back of the vehicle.
 {¶ 27} "Q. And was there anything else about, uh . . . these individuals standing around the vehicle that caught your attention?
 {¶ 28} "A. Well, I recognized it as being a — a drug transaction.
 {¶ 29} "Q. Well . . .
 {¶ 30} "A. The . . .
 {¶ 31} "Q. . . . why did you recognize it as a drug transaction?
 {¶ 32} "A. I had — I had seen the various — the same thing in the past. Made traffic stops on, uh . . . — one individual who comes to mind, uh . . . he had Mr. McComb standing in `is window just like that. He was bent down in the vehicle, I knew he was selling' drugs to the gentleman. I initiated a traffic stop, uh . . . and the man su- — surprisingly admitted that he was there to buy drugs, even said he did, but he had swallowed `em as I initiated my stop.
 {¶ 33} "Q. And that was based upon your observance of Mr. McComb bending down, his arms inside and head inside a vehicle?
 {¶ 34} "A. Yes, I . . .
 {¶ 35} "Q. S- — some — same — or same, uh . . . activity that you observed on October 16th, with Mr. Johnson?
 {¶ 36} "A. Yes, Ma'am."
 {¶ 37} "The propriety of an investigative stop by a police officer must be viewed in light of the totality of the surrounding circumstances." State v. Bobo (1988), 37 Ohio St.3d 177, 524 N.E.2d 489, paragraph 1 of syllabus, certiorari denied (1988), 488 U.S. 910,109 S.Ct. 264, 102 L.Ed.2d 252. The totality of the circumstances must "be viewed through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold." State v. Andrews
(1991), 57 Ohio St.3d 86, 87-88, 565 N.E.2d 1271, 1273, certiorari denied (1991), 501 U.S. 1220, 111 S.Ct. 2833, 115 L.Ed.2d 1002. See State v.Mackey (2001), 141 Ohio App.3d 604, 610.
 {¶ 38} In our view, the totality of the circumstances, as seen through police officer Dine's eyes, justified an investigative stop. Dine did not merely observe Johnson in the company of a known drug trafficker in an area known for drug transactions; in addition, he witnessed activity involving the known drug trafficker and Johnson that he believed, based upon his previous observations and experience, to be a drug transaction in progress. This included McComb's leaning into Johnson's car window, with both of McComb's arms in the car, as well as two other individuals similarly leaning into the car where the other occupants of the car were sitting. In addition, Dine saw the individuals outside the car quickly disperse when Dine, in a marked cruiser, approached. In our view, the totality of these circumstances sufficed to give Dine a reasonable and articulable suspicion that a drug transaction had been occurring. This permitted Dine to make a lawful investigative stop.
 {¶ 39} At trial, Johnson independently challenged the seizure of the crack pipe from his pants pocket. He appears to have abandoned that argument on appeal. Because Dine, who testified that he had previously seized crack pipes from suspects' persons, testified that he immediately recognized the object, when he felt it, as a crack pipe, we conclude that Johnson has appropriately abandoned this argument.
 {¶ 40} Johnson's sole assignment of error is overruled.
 III {¶ 41} Johnson's sole assignment of error having been overruled, the judgment of the trial court is Affirmed.
WOLFF, P.J., and GRADY, J., concur.