OPINION
{¶ 1} Jeffrey Sparks pled no contest to possession of drug paraphernalia and to disorderly conduct following a decision by the Fairborn Municipal Court overruling his motion to suppress evidence. The court found him guilty and fined him $50 for the disorderly conduct. On the paraphernalia charge, the court fined him $100 and sentenced him to thirty days in jail, all of which was suspended on the condition of his good behavior. The court also suspended Sparks' drivers *Page 2 
license for six months. Sparks appeals from his conviction, arguing that the trial court erred in overruling his motion to suppress.
 {¶ 2} In reviewing the trial court's ruling on a motion to suppress evidence, this court must accept the findings of fact made by the trial court if they are supported by competent, credible evidence. SeeState v. Morgan, Montgomery App. No. 18985, 2002-Ohio-268. "But the reviewing court must independently determine, as a matter of law, whether the facts meet the appropriate legal standard." Id.
 {¶ 3} The state's evidence presented at the hearing on the motion to suppress revealed the following facts.
 {¶ 4} At approximately 2:30 a.m. on April 28, 2005, Sgt. Rodney Myers and Officer Steven Bertles of the Fairborn Police Department, driving in separate vehicles, were dispatched to Taco Bell on North Broad Street in Fairborn, Ohio, on a report from a Taco Bell employee that several males had forced a female into a vehicle. While en route to Taco Bell, the officers learned that the vehicle had left Taco Bell and was traveling northbound. The employee described the vehicle as a light blue Chevy Blazer and provided its license plate number.
 {¶ 5} The officers eventually located the vehicle parked at a Speedway gas station at the 1100 block of North Broad Street. As Sgt. Myers pulled into the gas station parking lot and exited his vehicle, he observed a male seated in the driver's seat of the Blazer and a female, later identified as Tina Powers, exit the passenger side door and enter the gas station. Sgt. Myers went into the gas station and asked Powers to exit with him so that he could speak with her. He detected strong odor of alcohol and observed that she had been crying, that her eyes were watery and bloodshot, that her speech was noticeably slurred, and that there was fresh blood on her hands and on the front of her *Page 3 
coat which had not yet dried. Although Powers had blood on her clothing, Powers was not injured. Myers informed Powers that he had received a report that a female had been abducted and forced into a vehicle at Taco Bell. Powers claimed that she had no knowledge of that, and she denied having been at Taco Bell. Myers escorted Powers to his patrol car and asked her to sit in the back seat.
 {¶ 6} Sgt. Myers then spoke with the driver of the vehicle, Jacob Parks, Sr. Myers informed Parks of the report he had received. Parks also claimed that he had not been at Taco Bell and had no knowledge of an abduction. Parks had not been drinking.
 {¶ 7} While Sgt. Myers spoke with the driver, Officer Bertles spoke with Sparks, who had exited the gas station and had attempted to get into the Blazer. Bertles requested and received Sparks' identification. Sgt. Myers then spoke with Sparks. Myers noticed an odor of alcohol on Sparks' breath and observed that his eyes were watery and bloodshot and that he appeared to have to lean on the vehicle. Myers again relayed the report he had received about an abduction at Taco Bell. Sparks also denied any knowledge of what Myers was talking about, and he denied having been at Taco Bell.
 {¶ 8} Sgt. Myers began to speak with other witnesses at the gas station, including people who just happened to be inside the gas station as well as a fourth individual who had been in the Blazer, Frank Swiger. Swiger initially denied being in the Blazer. He later indicated that he had been in the vehicle and that he had been in a bar fight that involved another person who had bled inside the vehicle. According to Swiger, he left the Blazer before the officers arrived and had been in the Speedway bathroom washing blood out of his mouth from his loose tooth.
 {¶ 9} While speaking with these witnesses, Sparks repeatedly interrupted and demanded *Page 4 
the return of his identification. Both Sgt. Myers and Officer Bertles advised the defendant that he was being detained while they were investigating an incident and that his identification would be returned to him at the conclusion of the investigation. Sparks asked if he was under arrest and was advised that he was not. Sparks continued to demand that he be allowed to leave. Myers stated that Sparks was argumentative, raised his voice, and made it difficult for him to speak with other individuals. Sparks interrupted Myers four to five times; he did not use profanity, call the officers names, waive his arms, or throw anything. Each time Sparks interrupted Sgt. Myers or Officer Bertles they would warn the defendant that he needed to calm down as they were conducting an investigation and that he could not leave. At one point, Sgt. Myers advised Sparks that he was interfering with an investigation and that he would be arrested if he continued to interfere. Sparks was subsequently arrested for disorderly conduct. At the conclusion of the investigation, Parks, Powers, and Swiger were not arrested.
 {¶ 10} At the Fairborn jail, the police officers searched Sparks and discovered a metal Altoids tin box that contained a brass pipe and marijuana. Sparks was charged with disorderly conduct, possession of drug paraphernalia, and drug abuse. On June 29, 2005, Sparks filed a motion to suppress the evidence obtained during the search, arguing that the police officers lacked authority to detain him by withholding his identification. After a hearing before a magistrate, the magistrate denied the motion to suppress. Sparks filed objections to the magistrate's ruling. On February 14, 2006, the trial court overruled the objections, reasoning that it did not need to decide whether the officers properly detained Sparks during the investigation. CitingState v. Kelly (Sept. 24, 1993), Clark App. No. 3007, the trial court concluded that Sparks' conduct was "wholly separate and apart from the offense which Sgt. Myers was investigating." The trial court adopted the magistrate's *Page 5 
ruling and overruled the motion to suppress.
 {¶ 11} On appeal, Sparks claims that the officers had neither a reasonable suspicion nor probable cause to detain him at the time he was arrested. Sparks states that he and his companions had denied that any abduction had occurred and there was no evidence of any other crime. He thus asserts that his continued detention and subsequent arrest were unlawful and that the fruits of that conduct should be suppressed.
 {¶ 12} The Fourth Amendment to the United States Constitution protects individuals from unreasonable searches and seizures. Terry v. Ohio
(1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889. Under Terry, police officers may briefly stop and/or temporarily detain individuals in order to investigate possible criminal activity if the officers have a reasonable, articulable suspicion that criminal activity has occurred or is about to occur. State v. Martin, Montgomery App. No. 20270,2004-Ohio-2738, at ¶ 10, citing Terry, supra; State v. Molette, Montgomery App. No. 19694, 2003-Ohio-5965, at ¶ 10. Reasonable suspicion entails some minimal level of objective justification for making a stop — that is, something more than an inchoate and unparticularized suspicion or `hunch,' but less than the level of suspicion required for probable cause." State v. Jones (1990), 70 Ohio App.3d 554, 556-557,591 N.E.2d 810, citing Terry, 392 U.S. at 27. We determine the existence of reasonable suspicion by evaluating the totality of the circumstances, considering those circumstances "through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold." State v. Heard, Montgomery App. No. 19323, 2003-Ohio-1047, at ¶ 14, quoting State v. Andrews (1991), 57 Ohio St.3d 86, 87-88,565 N.E.2d 1271; see State v. Bobo (1988), 37 Ohio St.3d 177, 524 N.E.2d 489
(setting forth factors to consider in determining whether a reasonable suspicion to make a stop exists). *Page 6 
 {¶ 13} An individual is subject to an investigatory detention, or "Terry stop", when, in view of all the circumstances surrounding the incident, by means of physical force or show of authority, a reasonable person would have believed that he was not free to leave or is compelled to respond to questions. United States v. Mendenhall (1980),446 U.S. 544, 553, 100 S.Ct. 1870, 64 L.Ed.2d 497; Terry, 392 U.S. at 16, 19. This investigatory detention is limited in duration and purpose and can only last as long as it takes a police officer to confirm or to dispel his suspicions. Terry, supra.
 {¶ 14} We have no difficulty finding that the officers had a reasonable suspicion of criminal activity to justify Sparks' detention. As stated above, the officers received a dispatch that a female had been forced into a vehicle by several males at a Taco Bell restaurant. The dispatch included a vehicle description and its license plate number. Upon locating the vehicle that matched the description and license plate, the officers had a reasonable suspicion that criminal activity may have occurred to justify the detention of the driver and the passengers. The officers observed that Powers, the only female, had fresh blood on her hands and clothing yet no apparent injury. Swiger also indicated that he had an injury to his upper tooth and had been washing off the blood in the gas station bathroom. Although each of the Blazer's occupants denied that an abduction had occurred, three of the occupants — Sparks, Parks, and Powers — denied having been at Taco Bell, which contradicted the seemingly unbiased report by the Taco Bell employee that the vehicle had been there. Based on this contradiction, the officers continued to have a reasonable suspicion of criminal activity to justify questioning additional witnesses and the brief detention of Sparks and his companions.
 {¶ 15} During the course of the officers' reasonable investigation, Sparks repeatedly interrupted the officers and interfered with their ability to speak with other individuals. The officers *Page 7 
had probable cause to arrest him for this conduct. Sparks does not challenge that this conduct constitutes disorderly conduct, and the conduct may constitute obstructing official business, in violation of R.C. 2921.31. Because Sparks was properly arrested, his search was lawful as a search incident to a lawful arrest. Accordingly, the trial court properly denied Sparks' request to suppress the evidence that resulted from the search.
 {¶ 16} Sparks' assignment of error is overruled.
 {¶ 17} The judgment of the trial court will be affirmed.
 FAIN, J. and DONOVAN, J., concur. *Page 1