[Cite as *State v. Berrian*, 2020-Ohio-1515.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 19AP-428 |
| v. | : | (C.P.C. No. 18CR-3319) |
| Thomas A. Berrian, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on April 16, 2020

**On brief:** *Ron O'Brien*, Prosecuting Attorney, and *Barbara A. Farnbacher*, for appellee.

**On brief:** *Yeura R. Venters*, Public Defender, and *George M. Schumann*, for appellant.

APPEAL from the Franklin County Court of Common Pleas

BRUNNER, J.

{¶ 1} Defendant-appellant, Thomas A. Berrian, appeals from a judgment of the Franklin County Court of Common Pleas entered on June 13, 2019, imposing a two-year period of community control for the offense of carrying a concealed weapon. In this appeal, Berrian challenges the denial of his motion to suppress the weapon on which the charge was based. Because a 911 caller provided the police with reasonable suspicion that Berrian was armed and dangerous, they were entitled to stop him and to frisk him for weapons. Where Berrian was slow to comply with orders to stop and raise his hands, we find that the officer effecting the stop did not violate the Constitution when he drew and pointed his weapon in order to gain compliance with his order. We therefore overrule Berrian's sole assignment of error and affirm the judgment of the trial court.

## I.  FACTS AND PROCEDURAL HISTORY

{¶ 2}    On July 11, 2018, a Franklin County Grand Jury indicted Berrian for carrying a concealed weapon.  (July 11, 2018 Indictment.)  Soon after pleading "not guilty," Berrian filed a motion to suppress.  (July 13, 2018 Plea Form; Dec. 10, 2018 Mot. to Suppress.)  The trial court held a hearing on the motion in April 2019.  (Apr. 3, 2019 Hearing Tr. filed Aug. 14, 2019.)

{¶ 3}    At the hearing, two witnesses testified—Officer Ryan Dingfelder of the Columbus Division of Police and Berrian himself.  *Id.* at 4, 29.  Dingfelder testified that on July 31,[1] 2018, he was dispatched to 593 South Oakley Avenue.  *Id.* at 7.  The police dispatcher advised the officer, via radio transmission and "patrol view" computer readout, that a known caller, who provided his name and phone number, said a man was waving a gun around and pointing it at him.  *Id.* at 8; State's Ex. A.  Dispatch described the suspect as a five-foot-tall black male wearing a black-and-white-striped shirt.  (Apr. 3, 2019 Hearing Tr. at 8-10; State's Ex. A.)  Dingfelder stated that when he arrived on the scene, there were already other officers in front of 593 South Oakley Avenue, so he decided to check the alley to the rear of the residence.  (Apr. 3, 2019 Hearing Tr. at 10.)  He drove past the residence, turned on a side street and then began to turn into the alley.  *Id.* at 10-11, 22.  In the alley behind the residence, he saw two men talking.  *Id.* at 10-11.  One was a short black man, about five feet tall, wearing a black-and-white-striped shirt.  *Id.*  As Dingfelder pulled into the alley, the men terminated their conversation and the fellow in the striped shirt started toward the back of the house.  *Id.* at 16-17.  Dingfelder drew his gun and followed the man, ordering him to stop and raise his hands.  *Id.* at 19, 23-24.  According to the officer, the man (whom the officer identified as Berrian) admitted he had a weapon on his person when Dingfelder inquired.  *Id.* at 19.  As Dingfelder held Berrian at gunpoint, another officer approached and secured Berrian.  (State's Ex. E1 at 0:33-1:23.)  Dingfelder then retrieved a gun from Berrian's pocket.  *Id.* at 1:23-1:27.  Dingfelder acknowledged that the verbal interactions were not captured on the video because the 60-second look-back period from the moment of the camera's activation does not contain audio data, and he did not activate his body camera until he closed with Berrian.  (Apr. 3, 2019 Hearing Tr. at 24-26.)  But it is

---

[1] Given that Berrian was indicted on July 13, 2018 and the indictment contains the allegation that the offense took place on July 1, 2018, we assume the date given by the officer at the hearing was either a misstatement or mistranscription.  *See* July 11, 2018 Indictment at 1.

clear from gesturing visible in the video that the two engaged in conversation before Dingfelder pointed his weapon and the other officer secured Berrian. (State's Ex. E1 at 0:33-1:23.)

{¶ 4} Berrian's testimony was largely consistent with the video and Dingfelder's testimony, but there were a few additional features and points of conflict of note. Berrian stated that he had already broken off conversation with the other man and started toward the house when he first became aware of the police cruiser in the alley. (Apr. 3, 2019 Hearing Tr. at 30.) He stated that he had a "hoodie" on, not a shirt. *Id.* at 31. Video evidence shows that he was wearing a white-and-gray-striped sleeveless zippered shirt with a black hood. (State's Ex. E1 at 0:54-1:05.) Berrian testified that he did not admit to the officer that he had a gun. (Apr. 3, 2019 Hearing Tr. at 32.) He also stated that the interaction was less cordial than the officer suggested in his testimony; he said he initially was not intending to comply with the officer's orders to remain still because he felt the commands were unconstitutional and that he only complied when the police threatened to shoot him. *Id.* at 31, 34-35. The video shows that Berrian was slow to raise his hands when first confronted by the officer with a drawn weapon. (State's Ex. E1 at 0:33-1:05.)

{¶ 5} After a brief recess in which to consider the matter, the trial court issued a ruling from the bench:

> THE COURT: The Court has had a chance to review the testimony as well as the exhibits admitted into evidence, Exhibits A1, A2, A3, Exhibit A, the dispatch call, Exhibit B, as well as Exhibit E1.
>
> The Court received the testimony of Officer Dingfelder. He testified that while working in a marked cruiser he received a 911 dispatch to the area of 591/593 South Oakley Avenue on a report of a male black, about five-foot tall, in a black-and-white-striped shirt pointing a gun at the caller. A review of Exhibit A does indicate that the caller left the name Jerry and a contact phone number for officers.
>
> In response, Officer Dingfelder testified that other patrol units had gone to the front of the suspected residence. He went down the alley. As he went down the alley, he saw a male black matching that description in the alley talking to another individual on a bicycle. He said -- he testified that the suspect went into a backyard behind the residence at South Oakley.

He exited his cruiser, made contact with the suspect, that he asked if they had a weapon on his person and that the suspect indicated he did, that he then ordered the suspect to keep their hands raised. He approached and ultimately recovered a loaded firearm.

Also admitted as part of Officer Dingfelder's testimony is Exhibit E1. It does not demonstrate what happened prior to the officer's arrival, his immediate observations upon arriving, but Exhibit E1 does confirm much of what his testimony was. Officer Dingfelder testified about the operation of the body cam, that once it's activated, it automatically goes back 60 seconds, what he calls a look-back, that there's no audio during that look-back provision.

But it's clear from reviewing Exhibit E1 that there is a conversation between the officer and the defendant and that a conversation took place. There's no audio to detail exactly what was said, but an individual matching the description of the defendant and matching a description of what the caller who called 911 -- the description given, it matches up very much with what was described, what the officer knew at the time he approached the scene.

Officer Dingfelder testified that during that conversation the defendant admitted he had a firearm and therefore was detained pursuant to a search and a firearm was ultimately recovered.

The Court also received the testimony of the defendant, Thomas Berrian. Mr. Berrian testified he was already in the backyard when the officers arrived, that he had not been in the alley prior to seeing the officers. Mr. Berrian testified that he did not tell the officers that he had a firearm. This can neither be confirmed nor denied by the body camera in Exhibit E1 because of that look-back provision doesn't provide audio for those intervening 60 seconds of the look-back as testified to by Officer Dingfelder.

The Court would note that Mr. Berrian testified near the bench. When the Court swore Mr. Berrian in, the Court did notice a strong odor of burnt marijuana emanating from the defendant and, quite frankly, I am considering that in weighing the value of his testimony. Mr. Berrian's testimony was slurred at times, was very slow, very deliberate and the Court has very serious concerns that Mr. Berrian testified while under the influence of marijuana or a combination of drugs. I -- I'm not going to have

> him submit to a urine screen today, but I have a lot of concerns about his state of mind when he testified.
>
> Even without that, Officer Dingfelder did have articulable facts to engage in a brief Terry detention for purposes of the Fourth Amendment and therefore the Court will deny the defendant's motion to suppress at this time.
>
> Looking at the totality of the circumstances, the 911 call, this is not an anonymous caller. This is a caller with a number and a name. The description given matches that of what the officer found when he arrived at the scene. And State's Exhibit E1, the body cam, although it would be nice to have that recording of the audio when he first arrived, it does match up with the officer's testimony.
>
> The Court finds that Officer Dingfelder testified accurately and finds his testimony simply more credible based on all the information before the Court. Therefore, in light -- you know, comparing Officer Dingfelder's testimony to that of Mr. Berrian, the Court finds that Officer Dingfelder is, for purposes of today's hearing, more credible. Therefore the motion to suppress will be denied.
>
> Furthermore, the motion regarding the statements -- to suppress the statements, although Mr. Berrian was not Mirandized, the officer's questioning was necessary for officer safety and to protect the public regarding the existence of a firearm. The nature of the call was that there was a firearm displayed and used in a threatening manner to the caller and therefore the statements will be admitted at trial as well.

(Apr. 3, 2019 Hearing Tr. at 36-40.)

{¶ 6} The trial court memorialized its decision in an entry issued later that day. (Apr. 3, 2019 Entry.)  Less than one week later, Berrian pled "no contest" to the charge of carrying a concealed weapon.  (Apr. 8, 2019 Plea Form; Apr. 8, 2019 Plea Hearing Tr., filed Aug. 14, 2019.)  On June 13, 2019, the trial court sentenced Berrian to two years of community control.  (June 13, 2019 Jgmt. Entry[2]; June 13, 2019 Sentencing Hearing Tr., filed Aug. 14., 2019.)

{¶ 7} Berrian now appeals.

---

[2] The trial court also issued a corrected entry on July 23, 2019, correcting a clerical error in the original entry that had incorrectly stated that Berrian pled "guilty" rather than "no contest." *Compare* June 13, 2019 Jgmt. Entry at 1 *with* July 23, 2019 Corr. Jgmt. Entry at 1.

## II. ASSIGNMENT OF ERROR

{¶ 8}   Berrian presents a single assignment of error for review:

> The trial court erred in denying the Defendant-appellant's motion to suppress evidence obtained in violation of U.S. Const. Amend. IV, XIV, and Ohio Const. Art I, § 14.

## III.  DISCUSSION

{¶ 9}   In reviewing decisions made on motions to suppress, we afford deference to the trial court's factual determinations and review the trial court's recitation of historical facts for "clear error"; however, we review statements of law and their application to facts de novo.  *See, e.g.*, *Ornelas v. United States*, 517 U.S. 690, 699 (1996); *In re A.J.S.*, 120 Ohio St.3d 185, 2008-Ohio-5307, ¶ 50; *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8.

{¶ 10}   "The United States Supreme Court recognizes three categories of police-citizen interactions: (1) a consensual encounter, which requires no objective justification, (2) a brief investigatory stop or detention, which must be supported by reasonable suspicion of criminal activity, and (3) a full-scale arrest, which must be supported by probable cause."  (Citations omitted.) *State v. Jones*, 188 Ohio App.3d 628, 2010-Ohio-2854, ¶ 13 (10th Dist.), citing *Florida v. Bostick*, 501 U.S. 429, 434 (1991); *Brown v. Illinois*, 422 U.S. 590 (1975); *Terry v. Ohio*, 392 U.S. 1 (1968).  In this case, there seems to be little dispute that Berrian was the subject of a "brief investigatory stop or detention" when Dingfelder told Berrian to put his hands up and trained his gun on him.  *See, e.g.*, State's Brief at 4-5; Berrian's Brief at 8.  The question at the trial level was whether that stop was based on reasonable suspicion of criminal activity.

{¶ 11}   We have previously explained the framework of reasonable suspicion:

> "[A]n investigative stop does not violate the Fourth Amendment to the United States Constitution if the police have reasonable suspicion that 'the person stopped is, or is about to be, engaged in criminal activity.' " *State v. Jordan*, 104 Ohio St.3d 21, 2004 Ohio 6085, P35, 817 N.E.2d 864, *quoting United States v. Cortez* (1981), 449 U.S. 411, 417, 101 S.Ct. 690, 695, 66 L. Ed. 2d 621.
>
> Reasonable suspicion entails some minimal level of objective justification, "that is, something more than an inchoate and unparticularized suspicion or 'hunch,' but less than the level of suspicion required for probable cause." *State v. Jones* (1990),

> 70 Ohio App.3d 554, 556-57, 591 N.E.2d 810, 8 Anderson's Ohio App. Cas. 48, citing *Terry*, 392 U.S. at 27, 88 S.Ct. at 1883; *State v. Carter*, 69 Ohio St.3d 57, 66, 1994 Ohio 343, 630 N.E.2d 355 (concluding a police "officer's inarticulate hunch will not provide a sufficient basis for an investigative stop"). Accordingly, "[a] police officer may not rely on good faith and inarticulate hunches to meet the *Terry* standard of reasonable suspicion." *Jones* at 557.

*Jones* at ¶ 16-17. Though Berrian argued before the trial court that there was not reasonable suspicion for Dingfelder's actions to stop and detain him, on appeal, Berrian now concedes that there was reasonable suspicion to stop him based on the identified 911 caller's information. (Berrian's Brief at 10.) *See also, e.g.*, *Navarette v. California*, 572 U.S. 393, 395, 399-402 (2014). Berrian's argument now centers on the contention that the police acted unreasonably in *how* they applied the information they received from the caller. (Berrian's Brief at 10-23.)

{¶ 12} The United States Supreme Court has "described 'the balancing of competing interests' as 'the key principle of the Fourth Amendment.' *Michigan v. Summers*, 452 U.S. 692, 700, n. 12 (1981). *See also Camara v. Municipal Court*, 387 U.S. 523, 536-537 (1967). Because one of the factors is the extent of the intrusion, it is plain that reasonableness depends on not only when a seizure is made, but also how it is carried out. *United States v. Ortiz*, 422 U.S. 891, 895 (1975); *Terry v. Ohio*, 392 U.S. 1, 28-29 (1968)." *Tennessee v. Garner*, 471 U.S. 1, 8 (1985). Berrian argues that the police acted unreasonably in this case because they effected the *Terry* seizure at gunpoint. (Berrian's Brief at 10-23.)

{¶ 13} As this argument was not asserted in the trial court but involves significant constitutional implication, we review it for plain error. *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, ¶ 21-22. An appellant seeking to show plain error must show that an obvious error affected his or her substantial rights. *Id.*; *see also* Crim.R. 52. He must "demonstrate 'a reasonable *probability* that the error resulted in prejudice,' such that there is a 'probability of a different result [that] is sufficient to undermine confidence in the outcome of the proceeding.' " (Emphasis sic.) *State v. Pippins*, 10th Dist. No. 15AP-137, 2020-Ohio-503, ¶ 25, quoting *State v. Myers*, 154 Ohio St.3d 405, 2018-Ohio-1903, ¶ 130; *accord State v. Burney*, 10th Dist. 15AP-197, 2020-Ohio-504, ¶ 23.

{¶ 14} The police officer in this case had information from an identified 911 caller (as relayed through a police dispatcher) that a short black man in a black-and-white-striped

shirt was waving a gun around and had pointed it at the caller. (Apr. 3, 2019 Hearing Tr. at 8; State's Ex. A.) Berrian has conceded that this amounted to reasonable suspicion to stop him, and this is consistent with caselaw finding such identified citizen callers are more reliable than anonymous tipsters. (Berrian's Brief at 10.) *See also, e.g.*, *Navarette*, 572 U.S. at 399-402. Reasonable suspicion only exists, however, where the information relayed supports an inference that criminal activity may be afoot. *Id.* at 401, quoting *Terry* at 30. Thus, implicit in Berrian's admission that there was reasonable suspicion is the recognition that one or more violent crimes may be inferred from a report that a person was waving a gun around and pointing it at someone. *See, e.g.,* R.C. 2901.01(A)(9)(a); R.C. 2903.11(A)(2); R.C. 2903.12(A)(2); R.C. 2903.21(A). On the facts of this case, Berrian's admission is tantamount to an admission that the police had reason to suspect that he was armed and dangerous sufficient to trigger the right to frisk him for weapons under *Terry* at 25-28.

{¶ 15} Even after acknowledging reasonable suspicion existed, Berrian still argues that the stop and detention violated the Constitution when the police drew and pointed their guns at him in effectuating the stop. It is clearly established in constitutional law that an officer may not actually employ deadly force in effecting a stop or arrest "unless it is necessary to prevent the escape *and* the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others." (Emphasis added.) *Garner*, 471 U.S. at 1, 3. It may be argued here that the officers, at the time they encountered Berrian behind the house and saw him walking calmly toward it with no visible weapons, did not have probable cause to believe *at the time of the stop* that Berrian posed a "significant threat of death or serious physical injury to the officer or others." *Id.*; *see also* State's Ex. E1 at 0:22-1:05. However, the officer did not have any assurance that Berrian did not have the gun that the identified 911 caller stated he had been waving around and pointing at the caller. Moreover, importantly, unlike in *Garner*, the officer in this case did not actually employ deadly force; he merely threatened it. Further, according to Berrian's own testimony, Berrian initially did not comply with the order to stop and raise his hands. (Apr. 3, 2019 Hearing Tr. at 31, 34-35; State's Ex. E1 at 0:33-1:05.) The parties cite no case (nor could we find one) in which a court found a violation of the Constitution where officers chose to draw and point their weapons when confronting a suspect they reasonably believed to be armed and dangerous. In fact, the little caselaw we

have found on this issue falls in precisely the opposite direction, against Berrian's argument. *State v. Hairston*, 156 Ohio St.3d 363, 2019-Ohio-1622, ¶ 22.

{¶ 16} We do not find that the officers effected the stop and search in this case in an unreasonable way. Nor do we find plain error in the trial court's failure to suppress on that ground. Berrian's sole assignment of error is overruled.

## IV. CONCLUSION

{¶ 17} Because the tip in this case provided the police with reasonable suspicion that Berrian was armed and dangerous, the officers were entitled under the law to stop him and to frisk him for weapons. It was not a violation of the Constitution for the police officer to have drawn his weapon and trained it on Berrian to effect the stop and frisk, particularly since Berrian was initially noncompliant and slow in obeying the officer's instructions to stop and raise his hands. Because we overrule Berrian's sole assignment of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

DORRIAN and BEATTY BLUNT, JJ., concur.

————————————