[Cite as *State v. Riechers*, 2021-Ohio-2527.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## CARROLL COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

MALIK MONTREL RIECHERS,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 20 CA 0944**

---

Criminal Appeal from the
Court of Common Pleas of Carroll County, Ohio
Case No. 2020 CR 6477

**BEFORE:**
Gene Donofrio, Carol Ann Robb, David A. D'Apolito, Judges.

---

**JUDGMENT:**
Reversed and Remanded

---

*Atty. Steven Barnett*, Prosecutor, *Atty. Michael Roth,* Assistant Prosecutor, Office of the Prosecuting Attorney, 7 East Main Street, Carrollton, Ohio 44615, for Plaintiff-Appellee, and

*Atty. Jacob Will*, and *Noah Munyer,* Malarcik, Pierce, Munyer & Will, 121 South Main Street, Suite 520, Akron, Ohio 44308, for Defendant-Appellant.

Dated:
July 22, 2021

**Donofrio, J.**

{¶1}     Defendant-appellant, Malik Riechers, appeals from a Carroll County Common Pleas Court judgment overruling his motion to suppress evidence found during a traffic stop.

{¶2}     On May 29, 2020, at approximately 12:40 a.m., Carrollton Police Officer Lionel Woods was on patrol and noticed a Toyota RAV-4 drive past him that appeared to not have a rear license plate.  Officer Woods pulled out behind the vehicle and began to follow it.  He then realized that the vehicle did in fact have a rear license plate from Virginia.  The officer radioed the license plate number in to dispatch and learned that it was registered to EAN Holdings.  Officer Woods knew that vehicles registered to EAN Holdings were rental cars.  In addition to the registration information, Officer Woods learned from dispatch that the vehicle was associated with a Raymond Guthrie, who did not have a valid driver's license.  Based on this information, the officer effectuated a traffic stop of the vehicle.

{¶3}     Guthrie was not in the vehicle.  Appellant and a co-defendant were.  Officer Woods learned this after questioning them.   The record does not disclose the details of what occurred next other than the stop lead to a search of the vehicle.  Apparently, a large amount of drugs was discovered.

{¶4}     A Carroll County Grand Jury subsequently indicted appellant on one count of trafficking in a fentanyl-related compound, a first-degree felony in violation of R.C. 2925.03(A)(2); one count of possession of a fentanyl-related compound, a first-degree felony in violation of R.C. 2925.11(A); one count of possession of heroin, a third-degree felony in violation of R.C. 2925.11(A); one count of possession of criminal tools, a fifth-degree felony in violation of R.C.  2923.24(A): and one count of possession of drugs, a first-degree misdemeanor in violation of R.C. 2925.11(A).  Appellant initially entered a not guilty plea.

{¶5}     Appellant then filed a motion to suppress all evidence against him asserting it was seized in violation of the Fourth Amendment because there was no

Case No. 20 CA 0944

reasonable suspicion for the traffic stop. The trial court held a hearing on appellant's motion where it heard testimony from Officer Woods. The court noted that Officer Woods testified the only reason he initiated the traffic stop was because dispatch informed him that the vehicle was associated with an invalid driver. It noted that Officer Woods could not see the driver and did not know who the driver actually was when he initiated the stop. The court pointed out that driving without a valid license is a crime. It stated that had Officer Woods not received the information that the vehicle was associated with an invalid driver, then he would have had no reason to investigate the driver at all. But because the officer had the information that the driver might be invalid, he had a duty to investigate further to determine if the crime of driving under suspension was being committed. Thus, the trial court concluded that the officer's decision to conduct an investigatory traffic stop was more than a mere "hunch" and was reasonable under the circumstances. Accordingly, the court overruled appellant's motion to suppress.

{¶6} Subsequently, appellant entered into a plea agreement with plaintiff-appellee, the State of Ohio. Per the terms of the agreement, appellant changed his plea to no contest to the charges in the indictment. The trial court entered findings of guilty to trafficking in a fentanyl-related compound, possession of a fentanyl-related compound, possession of criminal tools, and possession of drugs. The court found him not guilty of possession of heroin. The court then moved on to sentencing. It found that the two fentanyl-related compound crimes were crimes of similar import, which merged for sentencing. The court then sentenced appellant to 11 to 16.5 years in prison and a $10,000 fine for trafficking in a fentanyl-related compound, 12 months for possession of criminal tools, and 180 days for possession of drugs. The court ordered that appellant serve his sentences concurrently.

{¶7} Appellant filed a timely notice of appeal on October 7, 2020. He now raises a single assignment of error.

{¶8} Appellant's sole assignment of error states:

THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT DENIED DEFENDANT-APPELLANT'S MOTION TO SUPPRESS.

Case No. 20 CA 0944

{¶9} Appellant argues the trial court should have granted his motion to suppress. He claims Officer Woods did not have reasonable articulable suspicion to stop the vehicle. Appellant points out that Officer Woods stated that he stopped the vehicle on a "hunch" that a driver "associated" with the vehicle might be unlicensed. Appellant argues an officer must have more than a mere hunch to effectuate a traffic stop. He points out that the vehicle was not speeding and posed no threat to anyone around it. Moreover, appellant asserts that Officer Woods could have inquired about the associated driver and learned that he lived in California and had not had a traffic violation in approximately ten years. And he notes that it is common knowledge that rental car companies do not rent vehicles to individuals who do not possess valid driver's licenses.

{¶10} Our standard of review with respect to a motion to suppress is first limited to determining whether the trial court's findings are supported by competent, credible evidence. *State v. Winand*, 116 Ohio App.3d 286, 288, 688 N.E.2d 9 (7th Dist.1996), citing *Tallmadge v. McCoy*, 96 Ohio App.3d 604, 608, 645 N.E.2d 802 (9th Dist.1994). Such a standard of review is appropriate as, "[i]n a hearing on a motion to suppress evidence, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and evaluate the credibility of witnesses." *State v. Venham*, 96 Ohio App.3d 649, 653, 645 N.E.2d 831 (4th Dist.1994). An appellate court accepts the trial court's factual findings and relies upon the trial court's ability to assess the witness's credibility, but independently determines, without deference to the trial court, whether the trial court applied the appropriate legal standard. *State v. Rice,* 129 Ohio App.3d 91, 94, 717 N.E.2d 351 (7th Dist.1998). A trial court's decision on a motion to suppress will not be disturbed when it is supported by substantial credible evidence. *Id.*

{¶11} The trial court's factual findings are supported by the record. The trial court found the following. Officer Woods began following the vehicle when he thought it did not have a rear license plate. After he saw that it did have a rear license plate, Officer Woods called in to dispatch with the license plate number. Dispatch informed him the vehicle was registered to EAN Holdings and was associated with a driver who had an invalid license. Officer Woods knew EAN was a rental car company but had no knowledge of who the actual driver of the vehicle was. With the knowledge that the vehicle was

associated with an invalid driver, the officer initiated a traffic stop. The officer did not notice any other traffic violations.

{¶12} The transcript of the suppression hearing corroborates the trial court's factual findings.

{¶13} Officer Woods testified that he was on patrol on the night in question when a Toyota RAV-4 drove past his cruiser that appeared to not have a rear license plate. (Tr. 7-8). Because it appeared the vehicle did not have a rear license plate, Officer Woods pulled out behind it. (Tr. 8). He then noticed that the vehicle did have a Virginia license plate recessed into the rear bumper. (Tr. 8-9). The officer then radioed the license plate number to dispatch. (Tr. 9). When asked what he learned from dispatch, Officer Woods stated: "That the registered owner of the vehicle was uh . . . EAN Holdings. Uh. . . which is commonly a rental, uh . . . rental company. Uh . . . but it also came back with an associated driver of a Raymond, I believe it was Raymond Guthrie. Uh . . . who was not val [sic.], not a valid driving uh . . .status." (Tr. 9-10). The officer testified that he has come across rental vehicles in the past when he has run license plate numbers but that they do not typically have information regarding an associated driver. (Tr. 10-11).

{¶14} Officer Woods then decided to initiate a traffic stop of the vehicle. He testified that he did not observe any other traffic infractions and that the basis of his traffic stop was the invalid driver status. (Tr. 12). He activated his overhead lights and stopped the vehicle. (Tr. 13). The associated driver, Guthrie, was not in the car. But appellant and a co-defendant were.

{¶15} On cross-examination, Office Woods testified that, to him, an "associated driver" means that the person has been stopped previously in that vehicle. (Tr. 14). He agreed that had dispatch not informed him of the associated driver without a valid license, he would not have had a basis to stop the vehicle. (Tr. 20). The officer agreed with defense counsel that he was operating under a "hunch" that Raymond Guthrie was operating the vehicle. (Tr. 21).

{¶16} Having determined that the trial court's factual findings are supported by competent, credible evidence, we next move on to determine whether the trial court applied the appropriate legal standard.

**{¶17}** The trial court found that this case involved a stop pursuant to *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), where a law enforcement officer may initiate a brief investigative stop when the officer has reasonable, articulable suspicion of criminal activity. The court noted that an officer may effectuate a traffic stop for even a de minimis traffic violation. The court pointed out that driving without a valid operator's license is a criminal activity. It noted that had Officer Woods not received the information that the vehicle was associated with an invalid driver, then he would not have had a basis on which to investigate. But because the officer was armed with the information that the driver might be invalid, he had a duty to investigate further and determine whether the crime of driving under suspension was in fact being committed. Thus, the court concluded that Officer Woods' decision to conduct an investigatory stop was based on more than a "hunch" and was reasonable under the circumstances.

**{¶18}** "The United States Supreme Court has interpreted the Fourth Amendment to permit police stops of motorists in order to investigate a reasonable suspicion of criminal activity." *Maumee v. Weisner*, 87 Ohio St.3d 295, 1999-Ohio-68, 720 N.E.2d 507 (1999), citing *Terry*, 392 U.S. 1, at 22.

**{¶19}** A police officer may run any license plate it chooses. *State v. Maston*, 7th Dist. Mahoning No. 02CA101, 2003-Ohio-3075, ¶ 16. In this case, the vehicle at issue caught Officer Woods' attention when it appeared to have no rear license plate. When the officer was able to locate the rear license plate, he ran the plates through dispatch. This much of the officer's investigation was reasonable.

**{¶20}** Dispatch provided Officer Woods with information that an unlicensed driver was associated with the vehicle he was following. Officer Woods also learned that the vehicle was a rental vehicle owned by EAN Holdings.

**{¶21}** What is significant in this case however, is what information Officer Woods did not possess. The officer had no information as to who was actually driving the vehicle or what the status was of the current operator's driver's license. Without this information, Officer Woods had no reasonable suspicion to effectuate a traffic stop. The officer testified that he did not observe any traffic violations. (Tr. 20). And he agreed that he stopped the vehicle on a "hunch" that Raymond Guthrie might be inside. (Tr. 21).

**{¶22}** "Reasonable suspicion entails some minimal level of objective justification for making a stop-that is, something more than an inchoate and unparticularized suspicion or 'hunch,' but less than the level of suspicion required for probable cause." *State v. Jones*, 70 Ohio App.3d 554, 556-557, 591 N.E.2d 810 (2d Dist.1990), quoting *Terry*, 392 U.S. at 27.

**{¶23}** In this case, the officer had no information that the person driving the vehicle had an invalid driver's license. The officer knew the vehicle was a rental. Thus, even if an unlicensed driver named Raymond Guthrie at some point was associated with that rental vehicle, Officer Woods had no information that Guthrie was driving the vehicle on the night in question. Moreover, in order to rent a car, a driver has to provide the rental company with a valid driver's license. Taking all of these facts and circumstances into consideration, Officer Woods did not have reasonable suspicion to effectuate a traffic stop in this case.

**{¶24}** Based on the above, the trial court erred in concluding that Officer Woods had reasonable, articulable suspicion to stop the vehicle appellant was travelling in. Therefore, the trial court should have granted appellant's motion to suppress.

**{¶25}** Accordingly, appellant's sole assignment of error has merit and is sustained.

**{¶26}** For the reasons stated above, the trial court's judgment is hereby reversed. The matter is remanded for further proceedings pursuant to law and consistent with this opinion.

Robb, J., dissents with dissenting opinion.
D'Apolito, J., concurs.

Case No. 20 CA 0944

Robb, J., Dissent with Dissenting Opinion

**{¶27}** I respectfully dissent from the decision reached by my colleagues. The trial court's decision denying the suppression motion should be affirmed.

**{¶28}** I agree with the law and analysis through paragraph 20 of the majority opinion. My disagreement lies with the analysis provided through the remainder of the majority opinion. I would hold the officer had a reasonable articulable suspicion to effectuate the stop.

**{¶29}** Precisely defining "reasonable suspicion" is not possible, and as such, the reasonable-suspicion standard is "'not readily, or even usefully, reduced to a neat set of legal rules.'" *Ornelas v. United States*, 517 U.S. 690, 695-696, 116 S.Ct. 1657 (1996), quoting *Illinois v. Gates*, 462 U.S. 213, 231, 103 S.Ct. 2317 (1983). The level of suspicion required to meet the reasonable-suspicion standard "is obviously less demanding than that for probable cause" and "is considerably less than proof of wrongdoing by a preponderance of the evidence" but is "something more than an 'inchoate and unparticularized suspicion or "hunch."'" *United States v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581 (1989), quoting *Terry v. Ohio*, 392 U.S. 1, 27, 88 S.Ct. 1868 (1968). To determine whether an officer had reasonable suspicion to conduct a *Terry* stop, the "totality of circumstances" must be considered and "viewed through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold." *State v. Andrews*, 57 Ohio St.3d 86, 87-88, 565 N.E.2d 1271 (1991). "This process allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.'" *United States v. Arvizu*, 534 U.S. 266, 273, 122 S.Ct. 744 (2002), quoting *United States v. Cortez*, 449 U.S. 411, 418, 101 S.Ct. 690 (1981). "A determination that reasonable suspicion exists, however, need not rule out the possibility of innocent conduct." *Id.* at 277. In permitting detentions based on reasonable suspicion, "*Terry* accepts the risk that officers may stop innocent people." *Illinois v. Wardlow*, 528 U.S. 119, 126, 120 S.Ct. 673 (2000).

**{¶30}** Here, dispatch reported to the officer that the vehicle was owned by a rental company. As the officer indicated, typically this is the only information discovered

when the license plate number is given to dispatch for running a search. However, that was not the case in this instance. The officer received information the vehicle was associated with a driver without a valid license. The officer did not need to know who was driving the vehicle to effectuate the stop. Knowing the vehicle was a rental associated with a driver without a valid license was the reasonable articulable suspicion to stop the vehicle. As the majority points out, in order to rent a car the driver must provide the rental company with a valid driver's license. That fact, in my opinion, does not negate reasonable articulable suspicion, but rather adds to it especially when the officer explained that typically rental car information does not come back with information on an associated driver. Thus, when considered together it raises reasonable suspicion. Consequently, considering the cumulative information, there was reasonable articulable suspicion to stop the vehicle. Admittedly, in this case the driver was not the person associated with the vehicle that did not have a valid driver's license. However, as stated above, the determination that reasonable suspicion exists does not rule out the possibility of innocent conduct; the acceptable risk of *Terry* stops is that in some incidents innocent people may be stopped. *Arvizu*, 534 U.S. at 277; *Wardlow*, 528 U.S. at 126.

{¶31} For the above stated reasons, I would affirm the trial court's decision denying the motion to suppress.

APPROVED:

_____

CAROL ANN ROBB, JUDGE

Case No. 20 CA 0944

———————————————

For the reasons stated in the Opinion rendered herein, the sole assignment of error is sustained and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Carroll County, Ohio, is reversed.  We hereby remand this matter to the trial court for further proceedings according to law and consistent with this Court's Opinion.  Costs to be taxed against the Appellee.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## <u>NOTICE TO COUNSEL</u>

**This document constitutes a final judgment entry.**