[Cite as *State v. Starcher*, 2014-Ohio-5223.]

STATE OF OHIO, JEFFERSON COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | ) | |
| | ) | CASE NO.    14 JE 17 |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | |
| VS. | ) | O P I N I O N |
| | ) | |
| BARRY STARCHER, | ) | |
| | ) | |
| DEFENDANT-APPELLANT. | ) | |


CHARACTER OF PROCEEDINGS:          Criminal Appeal from County Court
                                   District III, Case No. 11CRB347.


JUDGMENT:                          Affirmed.


APPEARANCES:
For Plaintiff-Appellee:            Attorney Jane Hanlin
                                   Prosecuting Attorney
                                   Attorney Jeffrey Bruzzese
                                   Assistant Prosecuting Attorney
                                   16001 State Route 7
                                   Steubenville, Ohio  43952


For Defendant-Appellant:           Attorney Thomas Watkins
                                   3393 Churchill Downs
                                   Stow, Ohio  44224


JUDGES:
Hon. Joseph J. Vukovich
Hon. Cheryl L. Waite
Hon. Mary DeGenaro

                                   Dated:  November 10, 2014

VUKOVICH, J.

{¶1}  Defendant-appellant Barry Starcher appeals the decision of the Jefferson County Court District III denying his motion to suppress.  The issue in this case is whether there was a reasonable articulable suspicion to stop Starcher and ask for identification.  For the reasons expressed below, given our deferential review of the trial court's resolution of factual questions, the judgment of the trial court is hereby affirmed.

Statement of the Case

{¶2}  This is the second time this issue has been before this court.  *State v. Starcher*, 7th Dist. No. 13JE1, 2013-Ohio-5533 (*Starcher I*).  In *Starcher I,* we did not decide the issue because we found that the trial court applied the incorrect test.  *Id.*

{¶3}  In ruling on the suppression motion in the first instance, the trial court found that the officer "relied upon sufficient facts, which gave rise to a reasonable suspicion for him to make the initial investigative stop."  *Id.* at ¶ 14; 06/11/12 J.E.  The conclusion that the initial stop was an investigative stop, i.e. a *Terry* stop, was not supported by the record.  *Starcher I* at ¶ 18-20.  Officer Kamerer's stated reason for stopping Starcher and his boyfriend James Coil was to see if they were okay.  *Id.* Officer Kamerer's testimony did not suggest that he had a reasonable suspicion that criminal activity was afoot.  *Id.*  Rather, his testimony clearly indicated that he was engaged in the community caretaking function when he stopped Starcher and Coil.  *Id.*

{¶4}  That said, we explained that during this consensual encounter Officer Kamerer was permitted to request identifying information.  *Id.*  We also acknowledged that consensual encounters can legitimately turn into investigatory stops once a reasonable articulable suspicion of criminal activity presents itself.  *Id.*  However, in *Starcher I* we could not determine if the consensual encounter evolved into an investigatory stop because to do so required this court to resolve factual questions and evaluate the credibility of the witness's testimony.  *Id.* at ¶ 25.  "[I]n deciding the case in the manner that it did, the trial court did not consider the witnesses' credibility in determining if the officer overstepped his authority during the consensual encounter and an illegal seizure occurred, or if the officer acted within his authority and the

actions of Starcher and Coil changed the encounter from consensual to investigatory." *Id.* at ¶ 26. In rendering this holding, we acknowledged that the testimony at the suppression hearing showed two different versions of what transpired. *Id.* at ¶ 3, 26. Therefore, we remanded the matter to the trial court to determine credibility and to apply the facts to the law to determine whether during the consensual encounter the officer showed an exertion of authority that resulted in an illegal seizure, or if the actions of Starcher and Coil changed the encounter from consensual to investigatory. *Id.* at ¶ 27.

{¶5} Upon remand, the trial court ordered the parties to brief the matter. After considering the briefs, the trial court once again denied the motion to suppress. It reasoned:

> The Court also holds that when applying the credible facts to the law as stated above, Officer Kamerer's initial interaction with defendants, Barry Starcher, and James Coil began as a community caretaking function and very quickly thereafter, based on the totality of circumstances created a reasonable articulable suspicion which turned the encounter from consensual to investigatory.

> The Court further holds that the action of the defendant, Barry Starcher during the encounter in question created a reasonable articulable suspicion on the part of Officer Kamerer, which changed the encounter from consensual to an investigatory stop and shortly thereafter, gave rise to probable cause, which ultimately lead to the detention and arrest of defendant, Barry Starcher on a charges [sic] of obstructing official business, in violation of O.R.C. §2921.31, a misdemeanor of the second (2nd) degree, and failure to disclose personal information, in violation of O.R.C. §2921.29(A), a misdemeanor of the fourth (4th) degree.

04/18/14 J.E.

{¶6} Starcher filed a timely appeal from that decision.

<u>Statement of the Facts</u>

{¶7} As stated above, upon remand the trial court did not hold a second suppression hearing. Instead, the trial court reviewed the parties' arguments and the transcript from the original suppression hearing. Therefore, the facts as set forth in *Starcher I*, which were derived from the suppression transcript, are the same facts that are applicable to this appeal. We set forth the facts in *Starcher I* as follows. *Starcher I* at ¶ 2-10.

{¶8} On December 25, 2011 at approximately 10 p.m. Starcher and his boyfriend, James Coil, were sitting on a guardrail located on County Road 7E, underneath the overpass of State Route 7, in Brilliant, Jefferson County, Ohio. Wells Township Police Department Officer Jeffrey Kamerer was called out for a downed tree. While en route to that destination he saw appellant and Coil. He stopped and asked them if everything was okay. The lights and siren on the cruiser were not activated. It was dark outside and cold and this was not a usual location where he saw people loitering.

{¶9} At this point, Officer Kamerer and Starcher's version of what transpired diverges. Officer Kamerer claims that after he rolled down the window and asked Starcher and Coil if they were alright, they responded in an aggressive manner and started cursing at him. Tr. 76. He then put his car in park, radioed the dispatch center for the sole purpose of letting them know that he "was out with two males". Tr. 78; Exhibit C (Investigator Notes). He then exited the cruiser and asked them what they were doing. Tr. 78; Exhibit C. Coil then began walking away. The officer called for Coil to come back, which he did. Tr. 78. The officer then asked them "What's going on?" Tr. 78. According to the officer, at that point, Coil shoved him. Tr. 78. The officer then advised dispatch that he needed back up. Exhibit C. He testified that he called for back-up because of the way they were acting towards him. Tr. 80.

{¶10} His testimony indicates that he asked the two men for their identification after they were yelling at him, but it does not specifically indicate whether he asked for their identification before or after he was shoved. In the Investigator Notes, the officer stated:

One male who was later identified as, Jimmy Coil pushed me and replied "get the fuck away from us". I advised dispatch that I needed another unit for assistance. I was trying to ask both males for identification and they still refused and became very combative towards me.

Exhibit C.

**{¶11}** The officer also testified:

Q. And—and at what—at some point do you ask the men to identify themselves?

A. Yes.

Q. Where on the timeline did—did that request for identification come?

A. When—when did I ask?

Q. Yeah. Is that after they started yelling?

A. Yes.

Tr. 81.

**{¶12}** In response to being asked for their identification, Coil threw a prescription pill bottle at the officer. Tr. 81. Officer Kamerer claimed that both men were screaming at him that they were not going to give their information and he was being shoved and pushed. Tr. 81. It was at that point that he advised them they were under arrest. Tr. 81.

**{¶13}** It is noted that Officer Kamerer did not testify that Starcher pushed him, rather, he claimed that Starcher was screaming and cursing. When asked how Starcher reacted to being advised he was under arrest the officer stated, "Screaming at me, cussing at me. He was trying to calm Mr. Coil down and he would interfere with me and Mr. Coil, scream at me." Tr. 82.

**{¶14}** According to the officer, Coil's reaction to being advised that he was under arrest was to partially walk and partially run away from the officer. Tr. 82. The officer, however, eventually caught him. Tr. 82. Coil was then maced, taken to the ground and handcuffed. During this time, Starcher was screaming, slapping and

tugging on Officer Kamerer's shirt and interfering with the arrest of Coil. Tr. 83–84. At some point, Officer Kamerer maced Starcher, took him to the ground, and put a knee in his back. He was not handcuffed because Officer Kamerer did not have a second set of handcuffs.

{¶15} Starcher gave a video statement to the police the day after this event occurred. The video statement was played during the suppression hearing. In that statement, Starcher explained that he and Coil had walked to a friend's house and were on their way back home when they stopped to rest on the guardrail. Tr. 19–21. Officer Kamerer then pulled up and asked if anything was wrong. Tr. 21. They responded by indicating that they were just sitting there and were on their way home. Tr. 22. Starcher stated that Officer Kamerer then asked for their names. Instead of giving it to the officer, Starcher told the officer, "I'm not sure I should give you that. Why do you need that?" Tr. 22. According to Starcher, Coil gave the officer his name, social security number and handed him a pill bottle as proof of the information because he did not have any other ID on him. Tr. 20. Coil then started walking away. Tr. 22. Starcher further explained:

> That's how that conversation started. Jimmy [Coil]—I guess Jimmy was real irritated with Officer Kamerer. So—with his questioning because just as soon as—as soon as I asked him why he needed to know Jimmy got up and started to walk away and then Officer Kamerer flew the door—the door flew open, he flew up out of the car and said "You better do what the fuck I tell you when I tell you" and that is what started it.

Tr. 27.

{¶16} Starcher stated that Officer Kamerer had his flashlight in his hand and was rearing it back like he was going to hit one of them with it. Tr. 29. Starcher indicated that he was pleading with Officer Kamerer to not hurt Coil and to just let him go since he already had given the officer his name. Tr. 30. Starcher stated that during this encounter Coil was screaming about police brutality even though the officer had not put his hands on either of them. Tr. 34. Starcher claimed that he was trying to

defuse the situation by telling Coil not to go and that they should "figure this out" and even put his hand over Coil's mouth. Tr. 29–30, 35. However, Coil continued to walk away and Officer Kamerer started to pursue Coil. Tr. 35. This resulted in an altercation between the officer and Coil. According to Starcher, Coil was then taken to the ground, handcuffed and mace is sprayed into his eyes. Tr. 40. Starcher watched this occur while standing at the side of the road. Officer Kamerer then approached him, sprayed mace in his eyes and took him to the ground. Tr. 42. He claimed he did not reach for or touch Officer Kamerer, but rather was yelling at him to not hurt Coil. Tr. 42–44. Starcher indicated that Officer Kamerer never told either of them that they were under arrest or that he needed to ask them questions. Tr. 38.

## Standard of Review

{¶17} Appellate review of a suppression decision presents a mixed question of law and fact. *State v. Roberts,* 110 Ohio St.3d 71, 2006–Ohio–3665, 850 N.E.2d 1168, ¶ 100. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. *State v. Mills,* 62 Ohio St.3d 357, 366, 582 N.E.2d 972 (1992). Thus, a trial court's factual findings are afforded great deference and an appellate court will accept them if they are supported by competent, credible evidence. *State v. Fanning,* 1 Ohio St.3d 19, 437 N.E.2d 583 (1982). The trial court's legal conclusions, however, are reviewed *de novo. State v. Burnside,* 100 Ohio St.3d 152, 2003–Ohio–5372, 797 N.E.2d 71, ¶ 8.

## Assignment of Error

{¶18} "Whether if the Appellant-Plaintiff's constitutional rights were violated because he was stopped without probable cause or a reasonable suspicion that he had committed a crime to a level allowing for further interrogation of defendants name.? [sic]"

{¶19} Starcher was charged with R.C. 2921.29(A)(1). That section provides that "no person who is in a public place shall refuse to disclose the person's name, address, or date of birth, when requested by a law enforcement officer who reasonably suspects * * * the person is committing, has committed, or is about to commit a

criminal offense." This statute appears to be a codification of *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868 (1968)*.* In *Terry,* it was explained that an investigatory stop (also known as a *Terry* stop) is proper when the facts demonstrate that the officer possessed a reasonable articulable suspicion which, in conjunction with rational inferences, warranted a belief that criminal behavior is occurring or is imminent. *Terry v. Ohio,* 392 U.S. 1.

**{¶20}** Therefore, if the stop was a *Terry* stop, then Starcher was required to comply with Officer Kamerer's order to provide identification. Failure to do so would be a violation of R.C. 2921.29(A)(1).

**{¶21}** As aforementioned, in *Starcher I* we found that the initial encounter between Officer Kamerer, Starcher and Coil was not a *Terry* stop, but rather was a consensual encounter. *Starcher I*, 2013-Ohio-5533 at ¶ 18-20. It was a consensual encounter because Officer Kamerer was engaged in a community caretaking function when he stopped and asked the men if everything was okay. *Id.* at ¶ 18-20. Nothing in the record suggested that at that point in time Officer Kamerer had a reasonable articulable suspicion that criminal activity was afoot. *Id.*

**{¶22}** In finding as such, we acknowledged that during a consensual encounter an officer does not violate a person's Fourth Amendment rights by merely stopping the person and asking if they are alright. *Id.* at ¶ 22. Furthermore, the person's Fourth Amendment rights are not violated when during a consensual encounter the officer asks the person for identifying information. *Id.*, citing *United States v. Mendenhall*, 446 U.S. 544, 555-556, 100 S.Ct. 1870 (1980). However, the individual does remain free to disregard the question and walk away. *Starcher I* at ¶ 23, citing *Mendenhall* and *Florida v. Bostick*, 501 U.S. 429, 435, 111 S.Ct. 2382 (1991) (police encounter remains consensual even if police officer asks questions, asks to see the person identification or asks to search the person's belongings, provided "the police do not convey a message that compliance with their requests is required.").

**{¶23}** That said, we acknowledged that consensual encounters can legitimately turn into investigatory stops once a reasonable articulable suspicion of criminal activity presents itself. *Starcher I* at ¶ 24.

**{¶24}** In the instant matter, the trial court found that the consensual encounter turned into an investigatory stop based on Starcher and Coil's actions toward Officer Kamerer. Thus, the trial court found that there was a reasonable articulable suspicion of criminal activity, that there was no Fourth Amendment violation, that Starcher was required to comply with the order to provide identification and that there was no basis for granting Starcher's motion to suppress.

**{¶25}** In finding as such, the trial court found Officer Kamerer's testimony as to what transpired on the evening of December 25, 2011, to be credible. 04/18/14 J.E. The trial court found that upon being asked if everything was okay, Starcher and Coil immediately responded in an aggressive manner; they yelled and cussed at the officer. 04/18/14 J.E. The trial court found Officer Kamerer's testimony that he asked for identification after he had been yelled at, pushed and after the two men refused to calm down to be believable. The court stated that while the initial interaction with Starcher and Coil began as a community caretaking function it quickly escalated into an investigatory stop based on the action of Starcher and Coil.

**{¶26}** A review of Officer Kamerer's testimony does support the conclusion that Starcher and Coil immediately responded to Officer Kamerer's question as to whether there was anything wrong in an aggressive manner; they were screaming and cursing at him. Tr. 78-81. Although Officer Kamerer's testimony does not clearly indicate whether he was pushed before or after he asked the men for their identification, Officer Kamerer's testimony clearly indicates that he was pushed. Tr. 81; Exhibit C. His testimony does show that things escalated very quickly. Thus, the trial court's findings of fact are supported by the record.

**{¶27}** Furthermore, these findings of fact would most likely support the conclusion that the consensual encounter turned into an investigatory stop, i.e. there was a reasonable articulable suspicion of criminal activity. It has been explained that a reasonable articulable suspicion entails some minimal level of objective justification, "that is, something more than an inchoate and unparticularized suspicion or 'hunch,' but less than the level of suspicion required for probable cause." *State v. Jones,* 70 Ohio App.3d 554, 556–57, 591 N.E.2d 810 (2d Dist.1990), citing *Terry* at 27; *State v.*

*Carter,* 69 Ohio St.3d 57, 66, 630 N.E.2d 355 (1994) (concluding a police "officer's inarticulate hunch will not provide a sufficient basis for an investigative stop"). *See also State v. Carlson,* 102 Ohio App.3d 585, 590, 657 N.E.2d 591 (9th Dist.1995). Furthermore, the propriety of an investigative stop must be viewed in light of the totality of the circumstances. *State v. Bobo,* 37 Ohio St.3d 177, 524 N.E.2d 489 (1988), ¶ 2 of the syllabus. Courts generally consider factors such as the high-crime nature of the area, the time of day, the experience of the officers involved, whether the officer was away from his cruiser, and suspicious activities by the defendant, such as furtive gestures. *Id.* at 179-180.

**{¶28}** In *Starcher I* we explained that encounters that involve "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled" are all examples of circumstance where consensual encounters may become seizures. *Starcher I*, 2013-Ohio-5533 at ¶ 23, citing *Mendenhall*, 446 U.S. at 554-555. Portions of that reasoning are applicable in determining whether a citizen's action changed the consensual encounter into an investigatory stop. Or in other words, those factors are applicable in viewing the totality of the circumstances and determining whether the consensual encounter changed to an investigatory stop because a reasonable articulable suspicion of criminal activity became apparent during the consensual interaction.

**{¶29}** Here, Officer Kamerer was out numbered two to one and the encounter occurred at 10 p.m. on December 25. Officer Kamerer indicated that Starcher and Coil responded to his initial contact of asking if they were okay by cursing and yelling at the officer in an aggressive manner. Furthermore, at some point Officer Kamerer was pushed; there was physical interaction that, according to Officer Kamerer, was initiated by Coil, Starcher's companion. It does not matter if this physical contact occurred before or after the request for identification because as explained above a request for identification during a consensual encounter does not violate a citizen's Fourth Amendment rights since the citizen is free to disregard the question and walk away. However, if the citizen responds to the request by pushing the officer and/or

acting in an aggressive manner, that action raises a reasonable articulable suspicion of criminal activity and changes the stop from a consensual one to an investigatory stop. Therefore, the acts as described by Officer Kamerer, considered in their totality, clearly changed the encounter from consensual to investigatory. Starcher and Coil's acts, at the very least, raised a reasonable articulable suspicion of criminal activity. Consequently, Starcher was required to comply with the request for identification.

{¶30} That said, it is acknowledged that Officer Kamerer's version of what transpired is vastly different from Starcher's version. From a cold record, neither version is incredible. However, the resolution of factual question and witness credibility are best left to the trier of fact. *Mills*, 62 Ohio St.3d at 366. Where there is evidence to support suppression and evidence to deny suppression, an appellate court will overwhelmingly affirm a trial court's decision due to the great deference that it must be given in matters of credibility and resolution of factual questions. *State v. Lynn*, 7th Dist. No. 11 BE 18, 2011-Ohio-6404, ¶ 44.

{¶31} Therefore, given our standard of review and the fact that the issue before us involves a factual determination, the judgment of the trial court to deny the motion to suppress is hereby affirmed. The sole assignment of error is deemed meritless.


Waite, J., concurs.
DeGenaro, P.J., concurs.