[Cite as *State v. McKenzie*, 2025-Ohio-150.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | : | JUDGES: |
| | : | Hon. William B. Hoffman, P.J. |
| Plaintiff - Appellee | : | Hon. Craig R. Baldwin, J. |
| | : | Hon. Andrew J. King, J. |
| -vs- | : | |
| | : | |
| RYAN J. MCKENZIE, | : | Case No. 2024 CA 00041 |
| | : | |
| Defendant - Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:      Appeal from the Licking County
                             Municipal Court, Case No. 2023
                             CRB 001341


JUDGMENT:                    Affirmed


DATE OF JUDGMENT:            January 21, 2025


APPEARANCES:

For Plaintiff-Appellee Village of Utica        For Defendant-Appellant

RAYMOND F. MOATS                               MICHAEL R. DELSANTO
205 S. Prospect Street                         P.O. Box 98
Granville, Ohio 43023                          Newark, Ohio 43058

*Baldwin, J.*

**{¶1}** The appellant appeals his conviction following a bench trial on charges of failure to disclose personal information and obstructing official business. Appellee is the State of Ohio.

### STATEMENT OF THE FACTS AND THE CASE

**{¶2}** On or about September 5, 2023, at approximately 1:30 a.m., Village of Utica Police Chief Cameron Dailey was on duty when he observed the appellant walking near a gas station and across State Route 62 while holding a shovel across his back. There was no traffic, and no other people around. Due to the late hour, the restaurants and other businesses in the area were closed. Chief Dailey observed the appellant walk between a restaurant and a carwash, and then walk behind the closed restaurant. Chief Dailey believed it looked "suspicious coming behind a building," and decided to make contact with the appellant.

**{¶3}** Chief Dailey pulled his cruiser next to the appellant and tried to engage him in conversation, but the appellant immediately exhibited what Chief Dailey described as "attitude," yelling profanities at Chief Dailey, saying that Chief Dailey had no right to stop him, refusing to provide his name, and repeatedly saying that he knew his second amendment rights. The appellant's hands remained on the shovel, which was lying over his shoulder, during the interaction. The appellant ignored Chief Dailey and continued walking, shouting that he had no obligation to identify himself or to stop, and telling Chief Dailey that he was going fishing. When Chief Dailey asked the appellant where his fishing pole was he refused to answer. Eventually Chief Dailey drove his cruiser ahead of the appellant, stopped, and activated his lights. The appellant continued to argue, and

continued his refusal to stop or provide his name. In addition, when Chief Daily asked him to put down his shovel, the appellant refused. The appellant turned from Chief Dailey to walk in the other direction. Chief Dailey ultimately pulled his taser and ordered the appellant to turn around, at which time the appellant finally dropped his shovel and complied.

{¶4}    The appellant continued to refuse to identify himself. However, Chief Dailey was eventually able to use a local computerized reporting system to identify the appellant. The appellant was thereafter arrested and charged with one count of failure to disclose personal information in violation of R.C. 2921.29(A)(1), a fourth degree misdemeanor; and, obstruction of official business in violation of R.C. 2921.31(A), a second degree misdemeanor.

{¶5}    The appellant was arraigned on September 13, 2023, at which time he pleaded not guilty. The appellant was released on his own recognizance, and the matter was scheduled for a bench trial on November 17, 2023. The appellant was thereafter appointed counsel, who requested a continuance of the November 17, 2023, bench trial and demanded a jury trial.  The trial court rescheduled the matter for a pre-trial on January 8, 2024, and jury trial on January 11, 2024. The appellant moved for a continuance of these dates. The trial court granted the appellant's motion to continue, and rescheduled the pre-trial for February 23, 2024, and the trial for March 14, 2024. On March 14, 2024, the appellant moved for another continuance of the pre-trial and trial dates. The trial court granted the motion and rescheduled the pre-trial for April 1, 2024, and the jury trial for May 9, 2024.  On April 1, 2024, the appellant again moved for a continuance of the pre-trial, signed a withdrawal of his demand for a jury trial, and consented to a bench trial.

The trial court granted the motion and rescheduled the matter for a bench trial on April 24, 2024.

{¶6}   The bench trial proceeded as scheduled on April 24, 2024.  The trial court confirmed with the appellant on the record that he agreed to waive his right to a jury trial, and the matter was tried to the bench. The appellee called Chief Dailey as its only witness, who testified as follows.

{¶7}   Chief Dailey had been a police officer for thirty-two years, and had worked for the Utica Police Department for eight years. He was on duty in the Village of Utica on September 5, 2023, at 1:30 a.m. when he observed the appellant "come walking across from the area of Circle K" and "across Route 62." He noted that it was usually "pretty quiet" at that late hour, and that was unusual to "even have cars, let alone people walking."

{¶8}   Chief Dailey observed the appellant walking with a shovel lying across his shoulders, and then observed him walk between a restaurant and a carwash. The appellant then proceeded to walk behind the closed restaurant. Chief Dailey testified that, after observing the appellant walk behind the closed restaurant while holding the shovel over his shoulder, he decided to engage in contact with the appellant. Chief Dailey drove his police cruiser across the street to the rear of the business where the appellant was walking out from behind the business. Chief Dailey stopped and got out of his vehicle in order to initiate contact with the appellant and engage him in conversation. Chief Dailey testified that from the onset the appellant's behavior was "instantly . . . just an attitude," that the appellant was "all upset," and kept yelling at Chief Dailey, using profanity "numerous times" during the interaction.

{¶9} Chief Dailey testified that he continued to ask the appellant about his activities because he "just look[ed] suspicious coming [from] behind a building." Chief Dailey testified that the appellant told him he was going fishing, which Chief Dailey found odd, since the appellant did not have a fishing pole. Chief Dailey noted that volume of the appellant's voice during their interaction would have awaken people if it had occurred in a neighborhood.

{¶10} Chief Dailey continued to ask the appellant to give him his name, and to stop to talk to him, but the appellant continued to tell Chief Dailey that he did not have to stop, and that he knew his second amendment rights. Chief Dailey continued ordering the appellant to stop, but the appellant refused and continued to walk away. Eventually Chief Dailey got back in his cruiser and drove ahead of the appellant with his lights to get in front of him, stopped his cruiser, and ordered the appellant to stop. The appellant continued to argue that he had no obligation to stop or to identify himself, turning around and proceeding in the opposite direction. Chief Dailey told the appellant to put the shovel down, and the appellant refused. The appellant turned to walk away from Chief Dailey yet again, but the Chief "grabbed the shovel." The appellant "pull[ed] away" from Chief Dailey, who "jumped back" and drew his Taser, repeating the order to drop the shovel and threatening to "tase" the appellant. The appellant finally complied and dropped the shovel. Chief Dailey ordered the appellant to turn around, and the appellant complied. Chief Dailey then placed the appellant in handcuffs and secured him in the back of his cruiser. The appellant continued to refuse to identify himself, but Chief Dailey was ultimately able to identify the appellant with the help of other officers and the local computerized reporting system. The appellant was arrested and taken to jail.

**{¶11}** On cross examination, Chief Dailey testified that there was no additional evidence of criminal activity by the appellant other than the suspicious behavior of walking between and behind closed businesses while carrying a shovel at 1:30 a.m., and that the places the appellant was walking were all open to the public. Chief Dailey further testified on that there was a stream near the area. Finally, Chief Dailey testified that in his eight years of service in Utica, he had never seen someone walking behind those buildings at that time of night. This concluded the evidence presented in the case.

**{¶12}** The trial court found the appellant guilty of failure to disclose personal information in violation of R.C. 2921.29(A)(1), and obstruction official business in violation of R.C. 2921.31(A), and found further that the charges did not merge. The trial court sentenced the appellant on the obstruction charge to five days in jail with credit for one day served, a two-hundred dollar fine and costs, with the fine suspended; and, sentenced him on the failure to disclose charge to a one-hundred and fifty dollar fine, which was also suspended. The aggregate sentence was, therefore, four days in jail and costs.

**{¶13}** The appellant filed a timely appeal, and sets forth the following two assignments of error:

**{¶14}** "I. APPELLANT'S CONVICTION FOR VIOLATING R.C. 2921.29 (FAILURE TO DISCLOSE PERSONAL INFORMATION) IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND IS NOT SUPPORTED BY SUFFICIENT EVIDENCE BECAUSE THE STATE FAILED TO PROVE BEYOND A REASONABLE DOUBT THAT CHIEF DAILEY "REASONABLY SUSPECTED" THAT APPELLANT "WAS COMMITTING, HAD COMMITTED OR WAS ABOUT TO COMMIT A CRIMINAL OFFENSE." R. AT 47."

**{¶15}** "II. APPELLANT'S CONVICTION FOR VIOLATING R.C. 2921.31 (OBSTRUCTING OFFICIAL BUSINESS) IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND IS NOT SUPPORTED BY SUFFICIENT EVIDENCE BECAUSE (1) THE STATE FAILED TO PROVE THAT CHIEF DAILEY WAS ENGAGED IN AN "AUTHORIZED ACT" THAT WAS A PART OF HIS "LAWFUL DUTIES" AND (2) THE STATE FAILED TO PROVE THAT APPELLANT COMMITTED AN OVERT ACT THAT WAS INTENDED TO HAMPER OR IMPEDE A PUBLIC OFFICIAL AND HAD THE EFFECT OF HAMPERING OR IMPEDING A PUBLIC OFFICIAL. R. AT 46."

**{¶16}** The appellant argues that his convictions were against the manifest weight of the evidence, and were not supported by sufficient evidence. We disagree.

### STANDARD OF REVIEW

**{¶17}** Sufficiency of the evidence was addressed by the Ohio Supreme Court in *State v. Worley,* 2021-Ohio-2207:

> The test for sufficiency of the evidence is "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus, *superseded by constitutional amendment on other grounds as stated in State v. Smith*, 80 Ohio St.3d 89, 102, 684 N.E.2d 668 (1997), fn. 4, and following *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). " 'Proof beyond a reasonable doubt' is proof of such character that an ordinary person would be willing to rely and act upon it in the most important of the person's own

affairs." R.C. 2901.05(E). A sufficiency-of-the-evidence challenge asks

whether the evidence adduced at trial "is legally sufficient to support the jury

verdict as a matter of law." *State v. Lang*, 129 Ohio St.3d 512, 2011-Ohio-

4215, 954 N.E.2d 596, ¶ 219.

*Id.* at ¶57. Thus, a review of the constitutional sufficiency of evidence to support a criminal

conviction requires a court of appeals to determine whether, after viewing the evidence

in the light most favorable to the prosecution, any rational trier of fact could have found

the essential elements of the crime beyond a reasonable doubt.

{¶18} Manifest weight of the evidence, on the other hand, addresses the

evidence's effect of inducing belief. *State v. Thompkins,* 78 Ohio St.3d 380, 386–387

(1997), *superseded by constitutional amendment on other grounds as stated by State v.*

*Smith,* 1997–Ohio–355. The Court stated:

> . . . Weight of the evidence concerns "the inclination of the *greater*
> *amount of credible evidence*, offered in a trial, to support one side of the
> issue rather than the other. It indicates clearly to the jury that the party
> having the burden of proof will be entitled to their verdict, if, on weighing the
> evidence in their minds, they shall find the *greater amount of credible*
> *evidence* sustains the issue which is to be established before them. Weight
> is not a question of mathematics, but depends on its *effect in inducing*
> *belief.*" (Emphasis added.) Black's, *supra,* at 1594.

(Italics original.) *Id.* at 387. The Court stated further:

> When a court of appeals reverses a judgment of a trial court on the
> basis that the verdict is against the weight of the evidence, the appellate

court sits as a " 'thirteenth juror' " and disagrees with the factfinder's resolution of the conflicting testimony. *Tibbs,* 457 U.S. at 42, 102 S.Ct. at 2218, 72 L.Ed.2d at 661. See, also, *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 219, 485 N.E.2d 717, 720–721 ("The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.").

*Id.*

Finally, "[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts. * * *

"If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment." *Seasons Coal Co., Inc. v. Cleveland,* 10 Ohio St.3d 77, 80 (1984), fn. 3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, at 191–192 (1978).

**ANALYSIS**

**{¶19}** The appellant's assignments of error are intertwined, and as such will be addressed together.

**{¶20}** The appellant was charged with failure to disclose personal information in violation of R.C. 2921.29(A)(1), and obstruction official business in violation of R.C. 2921.31(A).

**{¶21}** R.C. 2921.29(A)(1) provides that "[n]o person who is in a public place shall refuse to disclose the person's name, address, or date of birth, when requested by a law enforcement officer who reasonably suspects either of the following: (1) The person is committing, has committed, or is about to commit a criminal offense." R.C. 2921.31(A) addresses obstruction of official business, and provides that "[n]o person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties."

**{¶22}** The appellant concedes at page 11 of his brief that he was in a public place at the time of his encounter with Chief Dailey, that Chief Dailey was a law enforcement officer who requested that the appellant disclose his name, and that the appellant refused to do so. Thus, the pertinent question before us is whether Chief Dailey had a reasonable suspicion that the appellant was committing, had committed, or was about to commit a criminal offense.

**{¶23}** Obstruction of official business was discussed by this Court in *State v. Willey,* 2015-Ohio-4572 (5th Dist.) as follows:

> Appellant was convicted upon one count of obstructing official business pursuant to R.C. 2921.31(A), which states: "No person, without privilege to do so and with purpose to prevent, obstruct, or delay the

performance by a public official of any authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties." Appellant argues her failure to cooperate with police cannot rise to the level of obstructing official business. Having reviewed the record of this case including the videotape of appellant's actions, we disagree.

The officers' "official business" was to investigate the allegations made by Herbert. When appellant refused to provide information and prevented Tiffany from providing any, the focus shifted to appellant. Her obstreperous behavior constituted an "act" within the meaning of the statute. "[Her] persistence in disregarding [the officers'] orders was sufficient evidence from which a rational trier of fact could conclude that [she] acted with the specific intent to prevent, obstruct, or delay [the officers] in [their] lawful duties." *1126 *State v. Shepherd*, 5th Dist. Richland No. 14CA63, 2015-Ohio-4330, 2015 WL 5917918, at ¶ 30; see also, *State v. Friedman*, 5th Dist. Stark No. 2013CA00150, 2013-Ohio-4669, 2013 WL 5753770, ¶ 24; *State v. Brooks*, 5th Dist. Knox No. 06CA000024, 2007-Ohio-4025, 2007 WL 2269414, ¶ 13. Having listened to the audio of appellant's obnoxious responses to the officers' inquiries, it is evident she hampered and impeded the investigation.

In *Shepherd*, supra, we agreed with the Twelfth District Court of Appeals' rationale in *State v. Florence* finding that interference with an

investigation under similar circumstances rises to the level of obstructing official business:

> "For the purposes of an affirmative act, we have previously found that moving away from officers, subjecting officers to verbal abuse, and physically resisting officers was sufficient to convict a defendant of obstructing official business. *State v. Merz*, 12th Dist. Butler No. CA97–05–108, 2000 WL 1051837 (July 31, 2000). Additionally, a defendant's volume and demeanor making it impossible to investigate a complaint has been found sufficient to constitute an act for an obstructing official business conviction. *City of Warren v. Lucas*, 11th Dist. Trumbull No. 99–T–0019, 2000 WL 655446 (May 19, 2000)."
>
> *State v. Shepherd*, 5th Dist. Richland No. 14CA63, 2015-Ohio-4330, 2015 WL 5917918, at ¶ 31, citing State v. Florence, 12th Dist. Butler No. CA2013–08–148, 2014-Ohio-2337, 2014 WL 2526069, ¶ 12.

Appellant did not physically resist police in the instant case but her argumentative demeanor needlessly escalated the entire incident and entirely stalled the investigation into the original complaint. Appellant characterizes her failure to cooperate with the officers' inquiry as an "omission" not covered by the offense of obstructing official business, but we find she acted affirmatively by making it impossible to investigate the complaint. Appellant repeatedly talked over the officers as they attempted to confirm or negate the domestic violence allegations. We note the video

supports the officers' uncontroverted testimony about chaos ensuing as they attempted to evaluate the circumstances of the children audibly screaming in the background. The audio also includes Wright's belligerent interaction with police and culminates in appellant screaming incoherently.

*Id.* at ¶¶21-24. So, too, did the appellant herein engage in behavior that exhibited an argumentative demeanor and needlessly escalated the entire incident in which Chief Dailey was investigating whether the appellant was committing, had committed, or was about to commit an offense while walking behind closed businesses at 1:30 a.m. while carrying a shovel over his shoulder. Further, the appellant's persistence in disregarding Chief Dailey's orders was sufficient evidence from which a rational trier of fact, in this case the trial court, could conclude that the appellant acted with the specific intent to prevent, obstruct, or delay Chief Dailey in his lawful duties.

**{¶24}** With regard to whether Chief Dailey had a proper basis upon which to request that the appellant disclose his name, the *Willey* Court also discussed "reasonable suspicion." Although the defendant's arguments therein dealt with suppression issues, the Court's analysis of "reasonable suspicion" is instructive:

As we have observed, the law within the State of Ohio recognizes three types of police-citizen encounters: consensual encounters, *Terry* stops, and arrests. *State v. Stonier,* 5th Dist. Stark No. 2012 CA 00179, 2013-Ohio-2188, 2013 WL 2326553, ¶ 41, citing *State v. Taylor,* 106 Ohio App.3d 741, 747–749, 667 N.E.2d 60 (2nd Dist.1995). A consensual encounter occurs when a police officer approaches a citizen in public, engages that person in conversation, requests information, and that person

is free to refuse to answer and walk away. *Id.* A consensual encounter does not implicate the Fourth Amendment's protection unless the police officer has in some way restrained the person's liberty by a show of authority or force such that a reasonable person would not feel free to decline the officer's request or otherwise terminate the encounter. *Taylor,* supra, at 747, 667 N.E.2d 60. An officer's request to examine a person's identification or search a person's belongings does not make an encounter nonconsensual. *Florida v. Rodriguez,* 469 U.S. 1, 4–6, 105 S.Ct. 308, 83 L.Ed.2d 165 (1984); *Florida v. Bostick,* 501 U.S. 429, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991).

A *Terry* stop is an investigatory detention. Such a stop is valid if the officer has reasonable and articulable suspicion of criminal activity. *Taylor* at 749, 667 N.E.2d 60. For such a stop to be valid, the officer must be able to point to specific facts when coupled with reasonable inferences from those facts to reasonably warrant the intrusion. The stop "must be viewed within the totality of the circumstances" presented to the officer at the time. *State v. Freeman,* 64 Ohio St.2d 291, 414 N.E.2d 1044, (1980), paragraph one of syllabus. "An officer need not shrug his shoulders at suspected criminal activity because he lacks probable cause to arrest; rather a brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo while obtaining more information may be reasonable in light of the facts known to the officer at the time." *Freeman,*

at 295–296, 414 N.E.2d 1044; *citing Adams v. Williams,* 407 U.S. 143, 145–

146, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972) (internal citations omitted)

*Id.* at ¶31-32. The *Willey* Court found that the defendant's refusal to cooperate, "shushing"

of other witnesses, and increasingly frenzied conduct supported the officers' suspicion of

criminal behavior.

**{¶25}** Our brethren at the Seventh District found similarly, holding in *State v.*

*Starcher,* 2014-Ohio-5223 (7th Dist.) as follows:

> In the instant matter, the trial court found that the consensual
>
> encounter turned into an investigatory stop based on Starcher and Coil's
>
> actions toward Officer Kamerer. Thus, the trial court found that there was a
>
> reasonable articulable suspicion of criminal activity, that there was no
>
> Fourth Amendment violation, that Starcher was required to comply with the
>
> order to provide identification and that there was no basis for granting
>
> Starcher's motion to suppress.
>
> In finding as such, the trial court found Officer Kamerer's testimony
>
> as to what transpired on the evening of December 25, 2011, to be credible.
>
> 04/18/14 J.E. The trial court found that upon being asked if everything was
>
> okay, Starcher and Coil immediately responded in an aggressive manner;
>
> they yelled and cussed at the officer. 04/18/14 J.E. The trial court found
>
> Officer Kamerer's testimony that he asked for identification after he had
>
> been yelled at, pushed and after the two men refused to calm down to be
>
> believable. The court stated that while the initial interaction with Starcher

and Coil began as a community caretaking function it quickly escalated into an investigatory stop based on the action of Starcher and Coil.

A review of Officer Kamerer's testimony does support the conclusion that Starcher and Coil immediately responded to Officer Kamerer's question as to whether there was anything wrong in an aggressive manner; they were screaming and cursing at him. Tr. 78–81. Although Officer Kamerer's testimony does not clearly indicate whether he was pushed before or after he asked the men for their identification, Officer Kamerer's testimony clearly indicates that he was pushed. Tr. 81; Exhibit C. His testimony does show that things escalated very quickly. Thus, the trial court's findings of fact are supported by the record.

Furthermore, these findings of fact would most likely support the conclusion that the consensual encounter turned into an investigatory stop, i.e. there was a reasonable articulable suspicion of criminal activity. It has been explained that a reasonable articulable suspicion entails some minimal level of objective justification, "that is, something more than an inchoate and unparticularized suspicion or 'hunch,' but less than the level of suspicion required for probable cause." *State v. Jones,* 70 Ohio App.3d 554, 556–57, 591 N.E.2d 810 (2d Dist.1990), citing *Terry* at 27; *State v. Carter,* 69 Ohio St.3d 57, 66, 630 N.E.2d 355 (1994) (concluding a police "officer's inarticulate hunch will not provide a sufficient basis for an investigative stop"). *See also State v. Carlson,* 102 Ohio App.3d 585, 590, 657 N.E.2d 591 (9th Dist.1995). Furthermore, the propriety of an

investigative stop must be viewed in light of the totality of the circumstances.

*State v. Bobo,* 37 Ohio St.3d 177, 524 N.E.2d 489 (1988), ¶ 2 of the

syllabus. Courts generally consider factors such as the high-crime nature of

the area, the time of day, the experience of the officers involved, whether

the officer was away from his cruiser, and suspicious activities by the

defendant, such as furtive gestures. *Id.* at 179–180.

*Id.* at ¶24-27.

**{¶26}** The totality of circumstances presented during the bench trial in this case established that Chief Dailey was able to point specific facts, coupled with reasonable inferences, that warranted his actions. He observed the appellant at approximately 1:30 a.m. walking around and behind closed businesses while carrying a shovel on his shoulder. When asked for his name, the appellant immediately became agitated and belligerent, yelling and cursing at Chief Dailey, refusing to provide his name, yelling that he knew his second amendment rights, and turning and walking away from the officer. Chief Dailey's testimony established that he asked the appellant his name because the appellant was walking behind closed businesses at 1:30 in the morning while carrying a shovel, circumstances that were highly unusual in the small town of Utica, so unusual that Chief Dailey had never encountered them in the eight years he had been with the Utica Police Department. It was not unreasonable, under the totality of the circumstances, for Chief Dailey to believe that a criminal offense was being committed, had been committed, or was about to be committed. Furthermore, just as the defendants in *Starcher,* the appellant herein immediately began shouting and cursing at Chief Dailey, his volume so loud that had they been in a residential neighborhood the appellant's yelling would have

awakened people. The appellant submitted that he was fishing, but while there may have been a stream nearby the appellant was not in possession of a fishing pole at the time of his encounter with Chief Dailey. Based upon these factors, we find that Chief Dailey had reasonable suspicion to ask the appellant for his personal information.

{¶27} The appellant submits that this Court's decision in *State v. Guleff*, 2024-Ohio-748 supports his argument that Chief Dailey lacked reasonable suspicion to ask the appellant his name. The *Guleff* case is, however, distinguishable, as the defendant therein was walking on a street, not in between closed businesses; did not have anything in his hands, such as a shovel or other tool or implement; and, after speaking with his attorney actually did provide his name to the law enforcement officer. The facts of the case sub judice are distinguishable from those in *Guleff,* as well as the other cases cited by the appellant. Accordingly, we find that, under the totality of the circumstances, Chief Dailey had reasonable suspicion to stop the appellant and ask for his name. We find further that, after viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could have found beyond a reasonable doubt that the appellant committed the essential elements of both failure to disclose personal information and obstructing official business. Finally, the trial court's verdict on the charges of failure to disclose personal information and obstructing official business is not against the manifest weight of the evidence.

**CONCLUSION**

{¶28} Based upon the foregoing, we find that the appellant's convictions on the charges of failure to disclose personal information and obstructing official business were supported by sufficient evidence, and were not against the manifest weight of the evidence. Accordingly, the appellant's two assignments of error are overruled, and the decision of the Licking County Municipal Court is hereby affirmed.

By: Baldwin, J.

King, J. concur

Hoffman, P.J. Dissents

*Hoffman, J., dissenting*

{¶29} I respectfully dissent form the majority opinion. I find the facts herein did not provide Chief Dailey with reasonable suspicion Appellant committed, was committing, or was about to commit a crime. As such, Appellant had no obligation to provide Chief Dailey with his name.

{¶30} Chief Dailey's attempt to stop Appellant changed the encounter from consensual to a detention, for which Chief Dailey had no reasonable grounds to do. While Appellant's conduct would support a charge of obstructing official business had Chief Dailey had grounds to legally detain Appellant, I find no such ground existed in the case sub judice.

{¶31} I would sustain both of Appellant's assignments of error.