[Cite as *State v. Wrosch*, 2025-Ohio-2330.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WILLIAMS COUNTY

State of Ohio/City of Bryan

     Appellee

v.

Matthew Wrosch

     Appellant

Court of Appeals No.   WM-24-019

Trial Court No.  CRB-24-0197

**DECISION AND JUDGMENT**

Decided:  July 1, 2025

* * * * *

Misty Wood, for appellant

* * * * *

**ZMUDA, J.**

## I.  Introduction

{¶ 1} Appellant, Matthew Wrosch, appeals the September 11, 2024 judgment of the Bryan Municipal Court, convicting him of one count of failing to provide identifying information to a police officer in violation of R.C. 2921.29(A)(1).  For the following reasons, we affirm the trial court's judgment.

## II. Facts and Procedural Background

{¶ 2} On April 23, 2024, appellant was charged with one count of failing to provide identifying information in violation of R.C. 2921.29(A)(1), a fourth-degree misdemeanor. The charge arose from an incident that occurred earlier that day, when appellant was seen recording videos in the City of Bryan in Williams County, Ohio. The Bryan Police Department received several calls requesting an investigation into appellant's conduct. When officers responded to the calls, one business owner informed them that appellant had been recording through the window of her clothing boutique into a private changing room. The owner then identified appellant as the individual she saw filming. When the officers approached appellant, they requested that he provide identification as part of their investigation. Appellant declined to provide the requested information, and the officer filed a complaint in the Bryan Municipal Court charging him with a violation of R.C. 2921.29(A)(1). Contemporaneous with the complaint, appellant was issued a summons and ordered to appear before the court on May 30, 2024, for arraignment. At that time, appellant entered a not guilty plea. Following discovery, the matter proceeded to a bench trial on September 11, 2024. At trial, the parties elicited the following testimony.

### Testimony of Sergeant Mason Hammond

{¶ 3} At the time of trial, Sergeant Mason Hammond had been employed with the City of Bryan Police Department, as the "second shift sergeant," for approximately eight years. He testified that on the afternoon of April 23, 2024, the department received

2.

numerous calls from business owners about two men recording both the exterior and interior of local businesses. Sergeant Hammond responded to these reports.

{¶ 4} Sergeant Hammond testified that when he arrived at the scene, he saw two men in the public area of the street. He suspected that these two men were the subject of the reports based upon the descriptions provided therein. These men were ultimately identified as appellant and his son. Upon seeing them, Sergeant Hammond made a U-turn to travel the way appellant and his son were heading. After completing his turn, Sergeant Hammond encountered Hailey Worthington, a local boutique owner. Worthington informed Sergeant Hammond that the two men had been recording her employees in the changing room in her store. Worthington identified the suspects by pointing at them while they were walking away.

{¶ 5} Sergeant Hammond then drove around the block and parked his car. At that time, he observed appellant and his son recording videos. Sergeant Hammond approached them and appellant's son began to run. After Sergeant Hammond detained him, he requested assistance in locating appellant. He testified that Officer Brian Robinson arrived at the scene in response to his request.

{¶ 6} Sergeant Hammond then spoke with Worthington again. Worthington clarified to Sergeant Hammond that "she had just gotten done changing and she looked up, which was when she noticed [appellant] had started recording" the private changing rooms at the rear of her business

3.

**Testimony of Brian Robinson**

{¶ 7} At the time of trial, Officer Brian Robinson had been employed with the Bryan Police Department for approximately two years. During that time, he had served as a patrolman. Officer Robinson's main duties included regular patrol and investigating crimes.

{¶ 8} On April 23, 2024, Officer Robinson was informed of the reports that individuals were recording inside the private areas of local businesses and knew that Sergeant Hammond had responded to the incident. Soon after responding, Sergeant Hammond had asked for assistance and Officer Robinson reported to the scene. Officer Robinson testified that when he arrived at the scene, he saw Sergeant Hammond on the corner detaining one individual. Sergeant Hammond then provided a description of another individual—appellant—that still needed to be detained.

{¶ 9} While Officer Robinson was speaking with Sergeant Hammond, appellant came around a corner and Sergeant Hammond confirmed that it was the second individual that he wanted detained. Officer Robinson then walked up to appellant and requested that he put his hands behind his back. Officer Robinson then told appellant he was being detained but that he was not under arrest. Appellant refused multiple times to comply with Officer Robinson's request, claiming that it was an "unlawful detention." Appellant eventually complied with the request to place his hands behind his back and was placed in handcuffs.

4.

**{¶ 10}** Once detained, Officer Robinson asked appellant to provide his identification.   Appellant responded by saying that he was being "unlawfully detained" and, therefore, he would not provide  his "ID." Appellant also declined to verbally provide his name and date of birth.

**{¶ 11}** Following this interaction, Officer Robinson took appellant to his vehicle. Officer Robinson testified, without explanation, that he ultimately obtained appellant's identification while in his vehicle.  The video of Officer Robinson and appellant's initial interaction, recorded by Officer Robinson's body camera, was introduced during his testimony and admitted into evidence, without objection, at the conclusion of the state's case.

### Testimony of Hailey Worthington

**{¶ 12}** Hailey Worthington identified herself as the owner of Fearfully Made Boutique, located in Bryan, Ohio. Every Tuesday at noon, the boutique broadcasts a live video online, which they call CommentSold, to promote sales. The employees, during CommentSold, try on different outfits and Facebook users can purchase these outfits. On April 23, 2024, the boutique had just finished their broadcast when Worthington's co-worker looked up and saw a phone placed up against the window in the dressing room. Worthington and her co-worker were unsure how long the phone was pressed up against the window. Worthington testified that the boutique had double-sided windows. These windows permitted employees to see out, but someone outside could not see in "unless

they were right on top of the window." Worthington clarified that if a phone is placed directly up against the window, as it was here, it could record inside the dressing room.

{¶ 13} After seeing the phone, Worthington chased down appellant and his son. When Worthington first tried speaking with appellant and his son, she was ignored. Worthington then told appellant, "you're scaring us, and somebody is going to be calling the cops." Appellant responded with a mocking "wah" noise and Worthington returned to her boutique. Another co-worker of Worthington's called the police to report the incident of recording in the changing room. Soon after, Worthington spoke with Sergeant Hammond at the scene about the incident. Worthington denied telling Sergeant Hammond that she believed appellant had recorded her in a state of nudity as reflected in the police report, but only that she "ha[d] no idea what he saw" while his phone was against the window.

### Appellant's Crim.R. 29 Motion for Judgment of Acquittal

{¶ 14} Following Worthington's testimony, the state rested its case. Appellant then moved for a judgment of acquittal, pursuant to Crim.R. 29(A), arguing that the state had not introduced sufficient evidence to establish each element of the charged offense. The state argued that it had introduced sufficient evidence because the testimony showed that appellant did not provide his name, date of birth, or any other identification when requested by law enforcement while the officers were investigating a possible voyeurism offense. The court denied appellant's motion and he proceeded with his case-in-chief.

6.

**Testimony of Matthew Wrosch**

{¶ 15} Appellant began his testimony by confirming that on April 23, 2024, he was in Bryan, OH, to "tour the city." Appellant testified that he began touring the city around noon and recorded multiple businesses. Some of the businesses permitted him to record inside, using the recording as an advertisement, since appellant's videos are uploaded to YouTube.

{¶ 16} Appellant testified that when he arrived at Worthington's boutique, he did not act any differently than he had at other locations. Appellant believed that the business was closed due to there being no indication that anybody was inside the building. Shortly after recording the boutique, appellant continued his tour until he eventually spoke with Worthington, approximately thirty minutes later, about his recording at the boutique. Appellant testified that he does not recall what Worthington said except that she said, "something about us [appellant and his son] making people scared."

{¶ 17} Shortly thereafter, appellant walked up to Officer Robinson. Officer Robinson informed him that he was being detained, and appellant asked, "for what crime?" Appellant testified that Officer Robinson responded to his question by saying "we'll talk about that later." Appellant informed Officer Robinson that he believed he had done nothing wrong and offered to clear up the whole situation by showing him the video he recorded of the boutique. The officer did not watch the video and appellant reiterated that the officer stated, "we'll talk about that later or something along that line." Appellant believed that he was detained unlawfully and therefore, did not provide

7.

identification when requested. Appellant conceded that providing the information would have made the interaction easier. Appellant testified that he refused to provide the requested information because: (1) it was his own personal information, (2) he believed he was being detained unlawfully, and (3) he had a Fourth Amendment right to decline providing the requested information.

### Verdict and Sentencing

{¶ 18} Appellant rested his case at the conclusion of his testimony. Following the parties' closing arguments, the trial court found appellant guilty of the charged offense. It sentenced appellant to 30 days in jail and a fine of $250 plus court costs. The trial court stayed execution of the sentence pending appeal. Appellant's conviction was memorialized in a judgment entry later that day.

### III. Assignments of Error

{¶ 19} Appellant timely appealed and asserts the following error for our review:

The directed verdict should have been granted because the officers did not have a reasonable suspicion that a crime had been committed. The evidence was not sufficient to support a finding of guilt.

### IV. Law and Analysis

### A. Standard of Review

{¶ 20} In his single assignment of error, appellant argues that the state failed to produce sufficient evidence that the officer had reasonable suspicion that appellant committed a criminal offense necessary to request his information pursuant to R.C.

8.

2921.29(A)(1).[1]  In reviewing the error, under the sufficiency of the evidence standard,

"the relevant inquiry is whether, after reviewing the evidence in a light most favorable to

the prosecution, any rational trier of fact could have found the essential elements of the

crime proven beyond a reasonable doubt." *State v. Smith*, 80 Ohio St.3d 89, 113 (1997).

The court does not weigh the evidence or assess the credibility of the witnesses under this

standard. *State v. Were*, 2008-Ohio-2762, ¶ 132. "Whether the evidence is legally

sufficient to sustain a verdict is a question of law." *State v. Thompkins*, 78 Ohio St.3d

380, 386 (1997).

## B.  Clarification of the issues before the court.

{¶ 21} Before addressing the merits of appellant's arguments, we must clarify the

issues before us. In his defense at trial, and in his brief, appellant argued that the officer

could have concluded his investigation into the suspected voyeurism offense by simply

watching the video on his phone to determine whether it contained video of the private

dressing room at Worthington's shop.[2]  Appellant, however, was not charged with

---

[1] Appellant's assignment of error challenges both the trial court's denial of his Crim.R. 29 motion for acquittal, identified as a motion for directed verdict, and the sufficiency of the evidence to support his guilty verdict generally.  Each of these errors are reviewed under the same sufficiency of the evidence standard.  *State v. Johnson,* 2014-Ohio-2435, ¶ 11 (6th Dist.) ("The standard of review for a denial of a Crim.R. 29 motion is the same as the standard of review for sufficiency of the evidence.").  As a result, we review the entirety of appellant's assigned error under the standard described herein.

[2] While such an argument seemingly admits that the officer had the reasonable suspicion necessary to investigate that offense, we do not construe appellant's argument as conceding that fact in light of his direct challenge to the reasonable suspicion in his stated assignment of error.

9.

voyeurism. Instead, he was charged with failing to provide identifying information in violation of R.C. 2921.29(A)(1). The sole question before this court is whether the state provided sufficient evidence that the officer had *reasonable suspicion* that appellant had committed the voyeurism offense at the time he asked appellant for identifying information. His guilt or innocence on the suspected voyeurism offense is irrelevant to our analysis because reasonable suspicion does not require proof that an accused individual actually committed the offense being investigated.

{¶ 22} This distinction was previously addressed in *McKee v. McCann,* 2017-Ohio-4072 ¶ 18 (8th Dist.), where the Eighth District Court of Appeals held that the state was not required to prove that the defendant committed the suspected offense in order to establish reasonable suspicion.  In *McKee*, a civil suit alleging a claim for false arrest, the plaintiff was suspected of shoplifting because he bypassed a line at a store exit through which employees verified shoppers' purchases. *Id.* at ¶ 1. Upon being stopped by an officer after bypassing the exit line, McKee would not comply with the officer's request that he provide his identification. The defendant was arrested for failing to provide identifying information pursuant to R.C. 2921.29(A)(1). *Id.* at ¶ 18. During the subsequent investigation, it was determined that the defendant had indeed purchased the items the store believed he had stolen. The fact that the defendant had not committed the suspected crime was irrelevant to his false arrest claim, however, because the officer reasonably believed that he had committed the offense at the time he requested the defendant's information. *Id.* at ¶ 20.  Put simply, a defendant's innocence of a suspected

offense is not dispositive of the separate, distinct offense of failing to provide identifying information. As a result, we find that appellant's claimed innocence of the voyeurism offense in the present case does not serve as a defense for the failure to provide information offense.

{¶ 23} Additionally, we note that an individual is not obligated to provide requested information pursuant to R.C. 2921.29(A)(1) when an officer has no reasonable suspicion that they have committed a criminal offense at the time the information is requested. *State v. Dickman,* 2015-Ohio-1915 (10th Dist.). In *Dickman,* an officer was scanning license plates in a grocery store parking lot. *Id.* at ¶ 2. When the officer drove by an SUV, neither of the occupants, including the defendant, acknowledged her presence. *Id.* The officer found this behavior "suspicious," parked her vehicle, and approached the SUV on foot. *Id.* The driver had exited the vehicle by that time, so the officer approached the defendant in the passenger seat. *Id.* The defendant, upon opening the door, set off the SUV's alarm. *Id.* at ¶ 3. He then exited the vehicle, dropping several plastic baggies that he indicated held the trading cards he was reviewing in the SUV. *Id.* The officer informed the defendant that there had been recent break-ins in the parking lot and requested the passenger identify himself. *Id.* at ¶ 4. The defendant declined and was arrested for failing to provide identifying information pursuant to R.C. 2921.29. *Id.* at ¶ 4-5.

{¶ 24} Prior to trial, the trial court granted the defendant's motion to suppress all evidence related to the stop, finding that the officer lacked reasonable suspicion to

11.

investigate a criminal offense. *Id.* at ¶ 6. The state appealed. *Id.* The Tenth District Court of Appeals affirmed the trial court's judgment. *Id.* at ¶ 14. It determined that the officer's testimony at the suppression hearing, that there was a "possibility" the defendant had committed a crime based on the "totality of everything," did not constitute the specific reasonable suspicion necessary to request the defendant's identifying information pursuant to R.C. 2921.29(A). *Id.* at ¶ 14. Without any articulable reasonable suspicion that an offense had occurred, the Tenth District Court of Appeals held that the defendant's refusal to "identify himself was not a crime" and affirmed the trial court's judgment. *Id.*

{¶ 25} Our review of the present appeal is guided by the decisions in *McKee* and *Dickman.* That is, we are not reviewing whether appellant was guilty or innocent of the suspected offense of voyeurism. *See McKee* at ¶ 20. Instead, our review is limited to whether the state presented sufficient evidence that the officer had a reasonable suspicion appellant had committed a voyeurism offense at the time he requested appellant's identifying information, rendering his refusal to provide that information a criminal offense pursuant to R.C. 2921.29(A)(1). *Dickman* at ¶ 13.

{¶ 26} Having established the scope of our review, we turn to the merits of appellant's assigned error.

C. **The state presented sufficient evidence to show that the investigating officer had reasonable suspicion appellant committed a voyeurism offense.**

{¶ 27} To determine whether an officer has reasonable suspicion that an individual committed a criminal offense, as described in R.C. 2921.29(A), we must find that the officer had sufficient reasonable suspicion necessary to conduct an investigatory "*Terry*"

12.

stop. *State v. Crump,* 2021-Ohio-2574, ¶ 17 (1ˢᵗ Dist.). A *Terry* stop, named after *Terry v. Ohio,* 88 S.Ct. 1868 (1968), is an investigatory detention that can only be initiated when an officer has reasonable suspicion that an individual was engaged in criminal activity. *State v. Mckenzie*, 2025-Ohio-150 ¶ 24 (5th Dist.). "Reasonable suspicion entails some minimal level of objective justification for making a stop—that is, something more than an inchoate and unparticularized suspicion or hunch but less than the required level of suspicion required for probable cause." *State v. Purley,* 2019-Ohio-3931, ¶ 25 (6th Dist.), citing *State v. Jones,* 70 Ohio App.3d 554, 556-557 (2d Dist.1990). For a *Terry* stop to be valid, "an officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrants that intrusion." *State v. Daniels,* 2013-Ohio-1081, ¶ 10 (6th Dist.) The actions of the officer to determine whether a *Terry* stop is valid is viewed through "the eyes of a reasonable and cautious police officer on the scene, guided by his experience and training." *State v. Bobo*, 37 Ohio St.3d 177, 179 (1988), citing *United States v. Hall*, 525 F.2d 857, 859 (1976). Having reviewed the record, we find that the state presented sufficient evidence to show that Officer Robinson had reasonable suspicion that appellant had committed a voyeurism offense.

{¶ 28} Officer Robinson first appeared at the scene at Sergeant Hammond's request. Upon his arrival, Sergeant Hammonds advised him that a witness stated that two individuals had been filming a private dressing room area of her business. Sergeant Hammonds had already detained one of the individuals. When appellant appeared around

13.

a corner, Sergeant Hammonds informed Officer Robinson that appellant was the other individual and Officer Robinson detained appellant. After appellant was detained, Officer Robinson requested appellant provide his identification and appellant refused. Thus, at the time Officer Robinson requested appellant's information, he had been advised that a witness had accused appellant of filming a private changing area in her store and that Sergeant Hammond had informed Officer Robinson that appellant was the individual the witness claimed had been filming the dressing room.

{¶ 29} Weighing this evidence in a light most favorable to the state, we find that state presented sufficient evidence that Officer Robinson had a reasonable suspicion that appellant had committed a voyeurism offense. Since Officer Robinson had reasonable suspicion that a criminal offense had occurred, appellant's refusal to provide the requested identifying information violated R.C. 2921.29(A)(1). *Dickman,* 2015-Ohio-1915 at ¶ 13 (10th Dist.) (holding that an individual's refusal to provide identifying information when an officer has reasonable suspicion that the individual committed a criminal offense violates R.C. 2921.29(A)(1)). As a result, we find that the state introduced sufficient evidence to support the trial court's guilty verdict and we find appellant's assignment of error not well-taken.

## V.  Conclusion

**{¶ 30}** For the foregoing reasons, we find appellant's assignment of error not well-taken and we affirm the September 11, 2024 judgment of the Bryan Municipal Court. Appellant is ordered to pay the costs of this appeal pursuant to App. R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J.                      _____
                                                              JUDGE

Christine E. Mayle, J.

                                                     _____
Gene A. Zmuda, J.                          JUDGE
CONCUR.

                                                     _____
                                                              JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.